# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 5, 1917.

T. BAYARD WILLIAMS, ADMINISTRATOR,
VS.
FREDERICK C. McFERREN.

*J. Milton Lyell* for plaintiff.

*Harry N. Abercrombie* for defendant.

**BOND, J.—**

There is nothing on the face of this agreement to render it unenforceable. Parties to a divorce suit may make such an agreement subject to the approval of the court, and if the court has approved it the agreement will be enforceable unless some extrinsic circumstances, not then apparent to the court, bring it within the category of collusive agreements. Here the agreement was filed in the case, and reported and explained by the Master, before the decree was signed. The signing of the decree upon that report amounts to an approval, for I must assume that the court examined the agreement and was satisfied that there was no collusion on the facts so far exhibited. I do not understand the Emerson case to hold that the necessary approval by the court can be found only in an embodiment of the terms of agreement in the decree, or in some other express acceptance of them.

Is there, then, in the surrounding circumstances since testified to anything which renders the agreement unenforceable? The evidence seems to me to show these facts. Prior to any steps looking to a divorce the husband had been devoting himself somewhat to a woman, or to women, other than his wife. His attentions to the one he has married since the divorce caused the whole trouble, he says. He thought it to be true, and probably the wife thought it to be true, that she had facts sufficient to procure a divorce. I take this to be the meaning of his statement that she "had dots on him." After that there was talk between them of a divorce. It was agreed that there should be a divorce or that a divorce was inevitable. The husband himself was anxious for it; he evidently wanted to marry the second woman. The wife made demands upon him for a liberal division of his property, and he agreed to these demands. Then the business was referred to a lawyer to be consummated. Apparently this couple had the notion, which is not uncommon, that a divorce can be procured by joint order to an attorney. They were corrected in this, and the wife procured a separate attorney.

The evidence does not permit a finding of any collusion on the part of the respective attorneys.

It was made clear to the wife that she did not have testimony sufficient to procure a divorce, and a detective was employed for her. After watching the husband for ten nights, the detective finally found him in a situation which afforded facts sufficient for the divorce. All this, says the husband, was prearranged with his counsel. He says he deliberately played a part in order to furnish the testimony.

And in confirmation of this defense of collusion, he shows that he and his wife remained on friendly terms throughout the divorce proceedings, after his marriage, and up to her death. And there is a well founded suggestion that the wife may have become engaged, at some time before her death, to marry another man. Further confirmation is sought in testimony of two friends of the wife to the effect that she admitted having arranged for testimony on which the divorce was to be procured.

On the other hand, the court must, I think, receive this defense with great caution. The wife is dead and so cannot present her side. Justice requires that all doubts be resolved in her favor. If it is true that she was not angered with her husband, and herself desired a divorce, it is also true that she exacted from him in settlement of alimony and property rights a share that he could not have been compelled to give her, and she evidently was not disposed to yield anything for a di-

vorce. A ten days' pursuit of evidence casts much doubt on the testimony of prearrangement. So does the fact that the wife was absent from her house and had to be sent for when the husband was found in the situation looked for. The husband says he placed himself in the desired situation previously during the ten days, but that was not sufficient because the evidence was not complete in the previous performance. Yet he did not know of this insufficiency at the time he again played his part, as he says, and was caught.

There is reason to infer that he did not, during the separation, limit his activities of this sort to the two instances which the detective knows of.

I have concluded that I should not accept the story of deliberate arrangement of the testimony on which the divorce was obtained. I think I must on the evidence before me admit as an equal possibility that the wife fortified her case from this source without the husband's aid.

But collusion may exist without any such express, deliberate agreement. And in this case I have concluded that there was in the making of this agreement an understanding that a divorce should be obtained, without defense; and that this, a circumstance, renders the agreement unenforceable. The agreement for the division of the property was, I have found actually arrived at before the parties referred the matter to an attorney, although the paper was prepared much later. The division was to be an incident or result of divorce, and necessarily presupposed an undefended suit. It would seem to have been clearly one of those agreements described by the Court of Appeals in the Emerson case (120 Md. 596), as an arrangement on property division, which amounts to collusion on the question of divorce itself.

Sheehan vs. Sheehan, 77 N. J. Eq. 411.

2 Bishop on Marriage and Divorce, Secs. 700 and 702.

Nelson vs. Vassenden, 35 L. R. A. (N. S.) 1167.

I therefore conclude that the court should not now enforce the agreement on the application of either party. The position which the husband now takes, after his safe divorce and his remarriage, however despicable, cannot be allowed to move the court to set aside the policy of non-interference regularly adopted for the protection of the courts themselves against imposition in these divorce cases.

The consequence of this conclusion is that the court will not compel performance of any stipulation. But the husband had performed some part of the agreement. He had turned over into the possession of the wife before her death, I find, all the personal property mentioned in it. This was left in or about the residence which she retained throughout the divorce proceeding, after the husband's remarriage, and up to the wife's death. Title is complete in that portion of the property, and there is no call for the enforcement of the agreement in respect to it. The court leaving the parties as it finds them, leaves the wife in complete legal ownership of all the personal property. The relief asked now, in respect to that property is against the husband's unlawful resumption of possession after the wife's death. But can the court give this relief?

On the facts there was no ground for seeking the interposition of a court of equity for recovery of the personalty alone. The appropriate remedy for that would have been replevin. And I do not know of any principle which would permit the granting, in one equity suit, of the relief needed in respect to each form of property. I conclude that the plaintiff must be referred to the remedy at law for the recovery of the personalty. This will be done by the removal of the case to one of the law courts under and in pursuance of Article 75, Section 115, or Article 26, Section 44, if the plaintiff wishes it in order to bring any suit but replevin at law. It seems clear that for the institution of replevin, begun as it necessarily is with a new writ, this present bill of complaint should be dismissed. Throughout this opinion I have treated the agreement as one for a division of property, rather than as one for alimony, strictly speaking. I have not been able to take the view urged by the defendant, that all these property rights should be regarded as lost to the wife, or her estate, upon her death.

A decree in accordance with the conclusions here stated will be signed when presented by the defendant.