## ISAAC A. EMERSON *vs.* EMILIE A. EMERSON.

*Alimony : definition; agreement as to—; made part of decree;
providing for more than alimony; power of Court to modify.*

Alimony is a maintenance awarded to the wife where the hus-
band refuses to give it, or where by improper conduct he
compels her to separate from him; it is not a portion of his
real estate to be assigned to her in fee simple, subject to her
control, or to be sold at her pleasure; but a provision for her
support, to continue during their joint lives or so long as
they live apart.                                    p. 590

Alimony was founded upon the common law obligation of the
husband to give support to his wife, which, in the absence of
statutory provision, would fail upon a decree of divorce *a
vinculo,* when the relation of man and wife was annulled.
                                                p. 590

The Act of 1841, Chapter 262, authorizes Courts of Equity to
award alimony, even in cases *a·vinculo,* of the same character
and limitations as alimony in cases *a mensa.*      pp. 590, 591

In general, an enrolled decree is final upon the rights of the
parties, and courts have no power to change those rights ex-
cept in cases not heard upon the merits, where it is alleged
that the decree has been entered by mistake or surprise, or
under such circumstances as shall satisfy the Court, in the
exercise of a sound discretion, that the enrollment should be
discharged.                                        p. 587

But Courts of Equity have power to modify provisions as to
alimony in decrees of divorce *a mensa* or *a vinculo,* and retain
continuing jurisdiction over such decrees, even though the
decree·is final as to the separation of the parties, and even
though the parties have incorporated their agreement as to
alimony in the decree.                    pp. 594, 597

Where an agreement between the parties provides for some-
thing more than alimony, as where it binds the husband to

pay the wife a certain sum until her death, irrespective of whether she survives him or not, and transfers certain property to her absolutely, and surrenders other property to trustees as security to enforce such payment during the wife's life, and such an agreement is embodied in the decree of divorce, a Court of Equity should not afterwards disturb the agreement, even though the divorced wife marries again.

pp. 598, 599

Where the agreement was of a character different from and beyond what the Court had jurisdiction to decree, the assent of the parties to its incorporation in the decree gave to the agreement no greater force than it would have had if decreed in the regular exercise by the Court of its divorce jurisdiction (*per Briscoe, Thomas and Stockbridge, JJ.*). pp. 600-601

The insertion of the property provisions in the decree was improper and the decree should be set aside; the wife to retain, however, against her husband, her rights at law for the breach of the agreement (*per Briscoe, Thomas and Stockbridge, JJ.*).

p. 601

*Decided April 25th, 1913.*

Appeal from the Circuit Court of Baltimore City (BOND, J.).

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Vernon Cook* and *Edgar H. Gans,* for the appellant.

*George Whitelock* and *Wm. Shephard Bryan, Jr.,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This appeal is from a decretal order sustaining a demurrer to a petition and dismissing the petition.

The appellee filed a bill praying for a divorce *a vinculo matrimonii,* and that she be "declared to be entitled to receive by way of alimony such an allowance from her said husband as may be proportionate to his means and station in life."

The appellant failing to answer, a decree *pro confesso* was entered. During the taking of testimony before the examiner there was offered in evidence an agreement between the parties, under the following introduction:

"It is agreed in the above case that no testimony need be taken bearing on the question of alimony and counsel fees, both parties hereby admitting that a proper and reasonable arrangement in reference thereto, to be incorporated in any decree of absolute divorce, that may be granted the plaintiff under the bill now pending is as follows:"

The arrangement is then set out in five provisions:

No. 1. That the husband shall pay the wife $28,800.00 per annum, in monthly installments, during her life.

No. 2. That he shall pay $5,000.00 to each of his wife's counsel.

No. 3. That to secure the payment of the alimony, he shall deposit a certificate of six hundred shares of the stock of the Emerson Drug Company with trustees who shall, upon default in the payments of installments of alimony, have the stock transferred to themselves, and then collect the dividends to apply on account of installments due or to become due. That after the wife's death the stock shall return to the husband; and that until default in payment of alimony he shall continue to vote it.

No. 4. That the furniture in the former residence of the couple shall remain the property of the wife, with the exception of some books to be selected by the husband, a portrait and a few curios.

No. 5. That an "Italian Garden" adjoining the residence shall remain appurtenant to the residence, which is the wife's property, so long as the wife shall reside there; and any purchaser of the residence from the wife shall have an option to purchase the garden from the husband at a price fixed.

Then follows (6), a specific promise on the part of the husband to pay the alimony of $28,800.00 annually; and (7) an agreement that if the Court should think it beyond

its jurisdiction to incorporate in the decree the provisions in Paragraphs 3, 4, 5 and 6, the parties should abide by them nevertheless.

A decree was passed divorcing the appellee from the appellant *a vinculo matrimonii* and the above provisions of the agreement were adopted by the Court, and, with the exceptions of Paragraphs 6 and 7, the exact language of the agreement was incorporated in the decree.

The appellee subsequently remarried, and fifteen months after the passage of the final decree the appellant filed a petition alleging the remarriage, and that the new husband was liable and able to provide for the maintenance and support of the appellee, and praying that an order be passed modifying the decree, to the extent of relieving him of all further obligations for the payment of alimony to the appellee.

To this petition the appellee filed a demurrer, denying that the appellant was entitled to any relief, and that the Court was without jurisdiction to grant the relief prayed.

The questions raised are: Has a Court of Equity in Maryland the power to modify, alter or rescind a final decree, founded upon a bill for absolute divorce, where there are no reservations, after it has become enrolled; if so, does the remarriage present such a case for its modification or rescission; and what effect, if any, does the fact that the part of the decree providing for alimony, is founded upon an agreement of the parties, have upon the decree.

As to the jurisdictional question, the appellee contends that it is a fixed and rigid rule of the Maryland practice that an enrolled final decree is final upon the rights of the parties, and that the Courts have no power, whatever, to change those rights, except in cases not heard upon the merits wherein it is alleged that the decree has been entered by mistake or surprise, or under such circumstances as shall satisfy the Court, in the exercise of a sound discretion, that the enrollment should be discharged. *Pfeltz* v. *Pfeltz,* 1 Md. Ch. 456; *Brown* v. *Thomas,* 46 Md. 640; *Herbert* v. *Rowles,* 30

Md. 270; *Hollingsworth* v. *M'Donald,* 2 H. & J. 198, note "d"; *Rice* v. *Donald,* 97 Md. 401.

The correctness of this contention, as a general rule, is not open to question. But it is claimed by the appellant that this decree being one dealing with alimony, as it is understood in Maryland, the Court retains a continuing jurisdiction over it and has power to modify its provisions as to the alimony at any time, upon proper cause shown.

The question has never been definitely settled in this State, but has been variously decided in other States, so it will be well for us to consider the jurisdiction of our Courts over the question of divorce and alimony. There has been a recent decision in this State, *McCaddin* v. *McCaddin,* 116 Md. 568, which the appellee claims controls this case. We can not agree with this contention. The question involved in that case was not whether the provision for alimony in a decree of divorce *a vinculo* could be modified, but whether the provision could be modified where the decree provided for alimony alone, without a divorce of either kind.

Chief Judge Boyd, in delivering the opinion of the Court in that case, said: "There has been some diversity of opinion between the Courts of different jurisdictions as to how far a final decree, allowing alimony, can be modified after the decree has become enrolled;" and then quoted from 2 *Am. & Eng. Ency of Law* (2nd Ed.), 135, to the effect that the amount of alimony allowed *pendente lite,* or upon a decree of divorce *a mensa el thoro* or alimony without a divorce could be changed as circumstances demanded it; but in cases of a decree *a vinculo* the award is absolute and could not be changed after enrollment, unless the decree contained a reservation of that right, or a statute gave the power to modify. Judge Boyd then said: "It seems to be well settled that at least when a divorce *a mensa el thoro* is granted or where there is an allowance of alimony without divorce, the decree can be modified as circumstances may require, etc." The question involved in this appeal was not before the Court in that case. There was no opinion by the Court

on this point, but merely a quotation stating what the rule was held to be by that authority. We think the learned judge below was correct in holding that that authority did not control this question.

Divorce was entirely unknown to common law, and in this State is of statutory creation. Limited divorces with alimony were in England for years granted by the Ecclesiastical Courts. In this State, there being no Ecclesiastical Courts the Legislature granted divorces; but the Courts of Chancery assumed jurisdiction over alimony. But by the Act of 1777 (Feby. session), Ch. 12, Code (1912), Art. 16, sec. 14, the power was given expressly to Courts of Equity to exercise this jurisdiction. That Act provides that, "The Courts of Equity of this State shall and may hear and determine all causes for alimony in as full and ample manner as such causes could be heard and determined by the laws of England in the Ecclesiastical Courts there." The only kind of alimony known to the Ecclesiastical Courts being that granted in connection with limited divorces. By the Act of 1841, Chapter 262, Code (1912), Article 16, section 36, Courts of Equity are given jurisdiction over both kinds of divorces. By the same Act, Code (1912), Article 16, section 15, it was provided that in all cases where divorces were granted alimony might be awarded. The only other provision of law, in this State, dealing with alimony is in Code (1912), Article 16, section 38, where it is provided that, "In all cases where a divorce is decreed, the Court passing the same shall have full power to award to the wife such property or estate as she had when married, or the value of the same, or of such part thereof as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of the divorce, or such part of any such property as the Court may deem reasonable."

Nowhere in our statutes is there a definition of what alimony is, and our Courts, since the Act of 1841, in granting alimony in connection with a decree of divorce *a vinculo,* have been awarding it as it was understood and

awarded by the Ecclesiastical Courts of England and our
Equity Courts, as incidental to divorce *a mensa.* Our under-
standing of alimony and its incidents has been borrowed
from the decisions of the Ecclesiastical Courts, and this
Court has, on several occasions, said that in divorce cases
the Courts of Equity of this State do not sit in the exercise
of their general equitable jurisdiction, but as a Divorce
Court, and are governed by the rules and principles estab-
lished in the Ecclesiastical Courts of England, so far as they
are consistent with the Code. *J. G.* v. *H. G.,* 33 Md. 401;
*Fisher* v. *Fisher,* 93 Md. 303.

In *Wallingford* v. *Wallingford,* 6 H. & J. 485, this Court
defined alimony to be "A maintenance afforded to the wife,
where the husband refuses to give it, or where, from his im-
proper conduct, he compels her to separate from him. It is not
a portion of his real estate, to be assigned to her in fee sim-
ple, subject to her control, or to be sold at her pleasure, but
a provision for her support, to continue during their joint
lives, or so long as they live apart separate." This is the
definition of alimony which has been recognized and followed
through all of the Maryland decisions down to the present.
The right was founded on the common law obligation of the
husband to give support to his wife, and in the absence of
statutory provision, of course, would fail upon a decree of
divorce *a vinculo,* the relation of man and wife being thus
annulled. But our Act of 1841, Chapter 262, conferred
upon our Courts, as we have seen, the jurisdiction of granting
divorces of both kinds, limited and absolute, and in addition
to the jurisdiction they already possessed as to alimony upon
a limited decree similar to the Ecclesiastical Courts, em-
powered them to award alimony upon a decree *a vinculo.*

The Act makes no distinction whatever between alimony
upon a decree *a mensa* and upon a decree *a vinculo.* We
think it is clear, then, that the Act providing for alimony
upon this decree, new to the Courts, was intended to provide
for alimony of the same character and limitations as the ali-

mony the Courts had for so long dealt with. In a great
many of the States statutes provide that the Court shall
award to the wife by way of alimony upon a decree for
divorce a portion of the property held by the husband and
wife or a sum of money in lieu of the property, to be abso-
lutely hers. Although this is designated as alimony it is
totally different from the theory of alimony as recognized
in Maryland. One is a division of property, while the other
is the maintenance of the wife out of the income of the hus-
band.

It is not, nor can it be, disputed that the Ecclesiastical
Courts had power at any time, upon proper cause shown, to
modify the provisions of a decree as to alimony. It is also
conceded that our Courts of Equity have power to modify
provisions as to alimony in decrees of divorce *a mensa*. The
jurisdiction, in decrees of that character, was not exhausted
by the rendering of the decree. The authorities are unan-
imous that the Courts retained the continuing jurisdiction
over these decrees, and although the decree was final as to
the separation of the parties the alimony could be increased
or diminished by the Courts, from time to time, as circum-
stances demanded it.

In *Alexander* v. *Alexander,* 13 App. D. C. 334, the same
jurisdictional question was involved. The law of the Dis-
trict of Columbia, as to divorces and alimony, was on prac-
tically the same footing as ours. The Court said: "It is very
true that in these cases (divorces *a vinculo matrimonii*) the
result of the adjudication is in some respects radically dif-
ferent from that of the adjudication in cases of limited
divorce. For by a decree dissolving the bond of matrimony
the parties are in law absolutely and irrevocably separated
from each other, and they become to each other as total
strangers * * * But the statute, for obvious reasons of public
policy and upon equitable grounds, authorizes the allowance
of alimony even in these cases; and the question is, whether
in the allowance of alimony in cases of divorce from the

bond of matrimony the character of the decree is of more rigid and absolute finality than that of the decree in cases of divorce from bed and board.

"The statute contains no intimation of any difference. On the contrary, the intimation is quite the reverse. The implication is that alimony in cases of divorce from the bond of matrimony is placed precisely on the same basis as alimony in cases of divorce from bed and board. Nor is there any good ground in reason for the application of a different rule in the different classes of cases. The argument would seem to be that, because a decree dissolving the bond of matrimony is, or may become, absolutely final and conclusive, there- , fore, the added provision for alimony must be equally final and conclusive. But this argument is wholly untenable. It is nothing unusual in equity for a decree in equity to be absolutely final in some respects or with regard to some matters, and to be interlocutory and subject to modification in other respects * * * Now, there is very much greater reason why, in divorce cases more than in any other class of cases, the interlocutory or incidental portion of the decree should continue to remain indefinitely under the control of the Court. Decrees of divorce from the bond of matrimony adjudicate only one permanent right—the right of the complainant to have the bond of marriage dissolved and to be in law placed in the position of an unmarried person * * * The decree for alimony is based upon the conditions existing at the time at which it is rendered; but these conditions are subject to change."

Continuing the Court said, in same case: "It is conceded on the part of the appellant, that upon good cause shown of inability on the part of the husband to pay the alimony, the Court might order a suspension of payment, and would not, or rather should not, punish him as for contempt of Court. But it seems to us that this concession virtually concedes the whole case. If the decree for the amount of alimony is of the rigid, inflexible, and unchangeable character claimed for it in the bill of review now before us, it is not apparent how

it can be suspended any more than it can be modified by a
reduction of the amount.   Suspension is just as much an
alteration of the decree as is reduction of the amount * * *
If there is a power in the Court to suspend the payment of
alimony, there is undoubtedly a power to reduce the amount.
The one can be inferred from the statute as well as the
other * * * We believe that it is also conceded that if there
is a reservation to the husband in a decree for the allow-
ance of alimony that he may apply to the Court at any time
for reduction, the Court would then have the authority to
make such reduction.   And it is claimed that as there was
no such reservation in the original decree in this case, the
Court is now powerless in the premises.   Undoubtedly it
would have been better in the original decree to have in-
cluded a reservation to both parties to move at any proper
time thereafter for a modification in the matter of alimony
upon good cause shown for such modification.   And yet it is
not quite apparent how the Court could have well reserved
to itself the authority to modify a decree if that authority
was not already vested in it by law * * * In proceedings for
divorce the jurisdiction of the Court is in some things nec-
essarily continuous * * * The enforcement of the payment
of alimony implies a continuous jurisdiction."

Again, the same Court said: "Now, we think that Con-
gress, in the enactment of the Statute of 1860 (which statute
is practically the same as the Maryland Statute) intended to
incorporate, and did, in fact incorporate, into it, the pro-
visions of the Ecclesiastical Courts of England and of the
Courts of Chancery of Maryland, and this district in regard
to alimony; and that it intended to make, and did in fact
make the allowance of alimony in accordance with the rules
and usages of those Courts and incident in the granting of
divorces both from the bond of matrimony and from bed and
board, however, inconsistent in theory the allowance of con-
tinuing alimony may be to the new relation created between
the parties in the former class of cases.   While it is com-
petent for the Court that grants a divorce from the bond of

matrimony to commute the alimony and to assign a sum in gross or a specific portion of the husband's property to the wife for her support and maintenance, and thereby to make the decree for such allowance final in every respect, yet, under the statute, which in this regard seems studiously to make no difference between the two classes of divorce, if the Court in fact allows to the wife divorce from the bond of matrimony the same kind of alimony which it would allow to a wife divorced merely from bed and board, it is not apparent why it should lose control of the one when it does not lose control of the other. Certainly there is no warrant for any such distinction in the statute, and we find none in reason."

We have quoted liberally from the opinion in the above case because of the similarity of the question before the Court in that case to the one in this case, and the similarity of the law of divorce and alimony in the District in 1898 to that in this State. It declared the jurisdictional right of modification existed in virtue of the Acts of Congress, which Acts are virtually in the language and meaning of our Acts. So similar were the Acts of the respective jurisdictions that, in our opinion, what was applicable to the one is applicable to the other. Since January 1st, 1902, however, the Code of the District expressly gives the Court power to modify or alter decrees of alimony. Code District of Columbia (1905), sec. 978.

We are of the opinion that the better reasoning leads, irresistibly, to the conclusion that in States where alimony is regarded as a maintenance for the wife's support out of the income of the husband and not a division of property, the jurisdiction exists in the Courts of Equity to modify that part of the decree providing for alimony whether the decree grants divorce *a vinculo* or *a mensa*. Such being our opinion, we deem it unnecessary to dwell longer on this phase of the case, but proceed to dispose of the other points involved.

Now, does the remarriage of the wife present such a circumstance as should cause a Court of Equity to modify that

part of a decree providing for alimony? Should it be entirely rescinded or only modified? The authorities are almost unanimous that in event of remarriage the decree should be modified, but there is a wide difference between them as to the absolute annulment of the alimony provision.

The rule as stated in 14th *Cyc.* 787 is: "Where a wife has obtained an absolute divorce carrying with it the privilege of a remarriage, and alimony is decreed to her, it is generally held that the husband upon her subsequent remarriage may secure an order vacating the decree as to alimony." A reading of the cases in the note to the above text shows that some of the cases have held that remarriage should cause the Court to entirely revoke the alimony provision, while others hold that remarriage presents a strong reason for modification and perhaps entire rescission. For instance, in *Brandt* v. *Brandt,* 40 Oregon, 477: "We do not mean to be understood as holding that the subsequent marriage will *ipso facto* dissolve the obligation of the former husband to continue the payment of the alimony, for the authorities do not seem to go so far, but we mean to say that it affords a cogent and convincing reason for the Court to modify or cut off the allowance altogether."

If we treat alimony, as we must do under the Maryland decisions, as a provision made by the Court to compel a husband to perform his common law obligation of support, then it seems clear that when a woman remarries the new husband has cast upon him the duty of support, and it would seem, in all reason, that the man who was performing this duty under the order of a Court should be relieved. Although by the divorce they are no longer husband and wife, the statute requires that the former husband should still perform the duty of support, but where another man assumes this duty of maintenance, it can not be the intent of the law that the former obligation should remain and that a woman should thus be entitled to the same support from two men. "The divorced wife abandons the provision made for her support out of the estate of her former husband by the decree

of the Court, for that adequate support which she contracts for by her second marriage. It is a matter that affects her own happiness, and about which she is perfectly free and competent to make a choice. Whether she acts wisely in her election and whether in every instance she obtains as good and as adequate support by her marriage as that which she abandoned, are questions about which Courts can have no concern. It is a matter of her own voluntary election." *Stillman* v. *Stillman*, 99 Ill. 196.

The main distinction, of the many cases of this subject, seems to be derived from the meaning ascribed to alimony in the various States. In those States where alimony is regarded as an award to the wife of a portion of the husband's property and becomes hers absolutely, as in the division of property, the remarriage affects no bar to her claim. But where it is treated as a continuation of the obligation to support, the remarriage relieves the former husband of the duty. *Nelson on Marrigae and Divorce,* sec. 933; 35 *Central Law Journal,* 487.

Altogether the better reasoning leads. to the conclusion that, as a general rule, as the new husband is obliged to give entire support, therefore, the former husband is to be thus relieved. But there may exist facts and conditions that would induce the Court to withhold this relief.

Now, as to the final question involved in this appeal. What different effect should the decree in this case have, because it is founded upon an agreement, of the parties, as to the amount of alimony to be awarded, from a decree in a case where there is no agreement? The stipulation in this agreement was that its provisions were to be followed, in the event that a divorce was granted, rather than the Court should found such award upon testimony taken. The law has generally regarded all agreements, made during the pending of the suit for divorce, as void, as being against public policy. Too easy is it for the parties to come to such an arrangement on property division as to amount to collusion on the question of the divorce itself. The practice is

common, nevertheless, for Courts to incorporate in their decrees provisions as to alimony which have been agreed to by the parties., The Court, however, must be satisfied that the agreement is not the result of collusion on the main point of the divorce. The practice is to submit the agreement to the Court, and if the Court is satisfied that it is a proper settlement, it will receive the sanction of a decree. 2 *Bishop on Marriage and Divorce,* section 702; *Nelson on Marriage and Divorce,* section 915. Then the validity of the award depends not upon the agreement, but upon the judgment or decree.

It was said *Moon* v. *Baum,* 58 Ind. 194: "It is not competent for the husband and wife to make a valid agreement, as to alimony, during the pendency of the suit for divorce, independent of the sanction of the decree of divorce." In *Southworth* v. *Treadwell,* 168 Mass. 511, it was said: "That the stipulation for alimony to be decreed in the suit for divorce added nothing to the force of the decree, and did not affect the power of the Court to change the rights of the parties by further orders or decrees respecting alimony." In *Wallace* v. *Wallace,* 74 N. H. 259, the Court said: "It may be conceded that a judgment or decree rendered by agreement can not be set aside or modified without the consent of the parties, except for fraud, when the agreement does not require judicial sanction to give it validity * * * This principle does not apply because a decree for alimony rests not upon the agreement, but upon the decision of judicial questions raised by the presentation of the agreement."

We are of the opinion, that if a Court approves the provisions of an agreement as to alimony it can incorporate them in its decree, but it, nevertheless, has the same power of modification of the decree as it had in the absence of an agreement. If then remarriage is a ground for the annulment of the provision for alimony, the annulment will take place the same in a decree based upon an agreement as in one founded upon testimony.

In the present case, however, in the absence of the agreement of the parties as to what disposition the Court should make of the prayer in the bill for an allowance to the appellee, it would not have been possible for the Court to have decreed for alimony as the decree provides. That this possibility was in the minds of the parties is apparent from the closing paragraph of the agreement, in which it is stated that in the event of the Court holding that it had no jurisdiction to incorporate but two of the provisions in the decree, that the parties would nevertheless carry out the others. But the Court, upon the submission to it of the agreement, was of the opinion that, the parties being in agreement, it could incorporate in the decree all of the provisions and so decreed. The decree thus founded was in force for fifteen months before the filing of the present petition, and whether the passage of such a decree was proper is no longer open to question. It was passed at the suggestion of the appellant and upon his written admission that it was a "proper and reasonable arrangement."

Although the bill prayed for alimony, and the beginning of the agreement stated that on the question of alimony no testimony need be taken, but that the agreement should be followed, nevertheless, although they called it alimony, it was not alimony as understood and followed under the Maryland law. It was not alimony as the Court, in the absence of the agreement, would have decreed. A mere recital of the provisions shows that under our statutes and decisions no such decree could have been passed, if this appellant had not been in agreement upon it. It was a plain attempt upon his part to have allowed to his wife something more than, under the law, could have been allowed as alimony and as the learned judge below said, we "should blind ourselves to the fact if we should treat that arrangement as one of alimony." If for alimony, why did he bind himself to pay these annual sums up and until the death of the wife, irrespective of whether or not she survived him? Was not that providing more that he could have been compelled to pro-

vide under the terms of alimony? It is settled in this State, that alimony ceases upon the death of either of the parties. *Wallingsford* v. *Wallingsford,* 6 H. & J. 485. Why did he agree to surrender six hundred shares of valuable stock to trustees, to enforce the payment of the sums during the life of the wife, and, in terms, only provided for their return to him at the death of the wife? Why the absolute transfer of all the furniture and the use of the Italian Gardens to the wife? None of these could have been decreed without his consent, and the conclusion is clear that he intended under this agreement to assure to his wife these provisions during the balance of her life, irrespective of any contingencies. The Court having embodied his agreement in the decree, we are of the opinion that a Court of Equity should not disturb it.

The order of the lower Court will be affirmed.

> *Order affirmed, with costs to the appellee.*

---

The following dissenting opinion was filed by JUDGES BRISCOE, THOMAS and STOCKBRIDGE:

While dissenting from the conclusion reached by the majority of the Court as embodied in the foregoing opinion, we entirely concur as to the greater part of the views therein expressed, and for that reason it becomes appropriate to state concisely the extent of the accord, the point of departure, and the reasons therefor.

In so far as the questions arising as to the power of the Court to modify the decree of May 29th, 1911, and that the provisions therein made for the plaintiff, Emelie A. Emerson, were not alimony in the legal signification of that term, but rather a division of property and the creation of an annuity, we fully concur with the doctrines adopted.

What then is the situation? The proceeding in the Circuit Court of Baltimore City was one for a divorce and alimony

as an incident thereto. Such are the clearly expressed prayers of the bill. The Circuit Court was, therefore, acting in the exercise of its function as a divorce court, not as a court of general equity jurisdiction. In this capacity its powers were those formerly exercised by the Ecclesiastical Courts of England, with such additional ones as may have been conferred by statute, and none other. The parties could not, by agreement, either enlarge or diminish the jurisdiction, and the fact that the Court in its decree incorporated certain provisions which had apparently been agreed upon by the parties, could give them no sanction or validity unless the Court, independent of the agreement, had the jurisdiction which would have enabled it, under the pleadings and evidence, to have entered the like decree. The Court in the exercise of its divorce jurisdiction in Maryland is limited to the following matters: It may by its decree determine the marital status of the parties to the cause; it may in an appropriate case award alimony; it may decree as to the property or estate of the wife which she had when married, and also may order and direct as to the guardianship and custody of the children of the parties, and impose their support or maintenance upon the husband or wife. Code (1912) Art. 16, sec. 38. But in so far as the decree attempts to exceed these matters it is nugatory and void. It is a familiar rule of equity that the relief granted in a decree can not go beyond the scope of the bill. It is not enough that the proof may show that the plaintiff is entitled to some relief, for unless that is the relief warranted by the allegations in the bill the plaintiff has failed to make out her case. 16 *Cyc.* 485, and cases there cited.

In the present case the bill was for a divorce *a vinculo matrimonii* and alimony. There was no allegation or prayer upon which to base a diversion of the property of the husband, or create an annuity in favor of the wife. Therefore, if this were to be regarded merely in the light of a proceeding under the general equity jurisdiction of the Court, the relief given by the decree was different in kind from that

appropriate to the case as made out by the bill, and with greater force does the equity rule apply when the Court is in the exercise of its narrower and more limited jurisdiction as a divorce court.

This does not leave the plaintiff remediless. It is true she was awarded no alimony by the decree, nor was there any evidence produced to the Court upon which to base any decree therefor. She had seen fit to enter into an agreement with her husband for certain numerated property and for the settlement on her of an annuity.

So far as appears from the record in this case, the agreement has all the vitality today that it had at the time it was executed. If it is departed from or broken by Mr. Emerson, there is nothing before us to show that Mrs. Emerson does not possess every legal or equitable right thereunder which she ever had, and is therefore entitled to pursue every remedy for a breach of the agreement that she ever could.

It is certainly a dangerous rule to establish, and particularly in a divorce Court, that parties may enter into whatever agreement they choose, independent and beyond the jurisdiction of the Court, and foreign to the case made by the bill, and then in case they succeed in procuring it to be incorporated in the decree, to accord to the decree a force which it could not have had but for such agreement, nor could their assent give the decree a force greater than it would have had in the regular exercise by the Court of its divorce jurisdiction. *Southworth* v. *Treadwell,* 168 Mass. 511; *Harvard Law Review,* (page 441), March, 1913.

In our view the insertion of the property provisions in the decree of May 29th, 1911, was improper, and that in so doing the Court exceeded its jurisdiction, and accordingly the decretal order of November 14th, 1912, should be reversed, and the prayer of the petition granted; but without prejudice to the plaintiff to pursue such remedy as she may be entitled to for a breach of the agreement in case the same has been, or shall hereafter be, violated.