JESSIE L. DICKEY *v.* WILLIAM J. C. DICKEY.
[No. 32, January Term, 1928.]

*Decided April 4th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Emory L. Stinchcomb,* for the appellant.

*Robert W. Beach,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The appellant, Jessie L. Dickey, obtained an absolute divorce from her husband, William J. C. Dickey, appellee, on statutory grounds. While the proceedings for divorce were pending, the parties sold and divided the proceeds of a property which they held as tenants by the entirety, and executed a paper writing whereby they agreed "that, in the event of the passage of a decree therein in favor of the plaintiff, a proper allowance to the plaintiff as and for permanent alimony in the sum of twenty-five dollars per week, and that the said sum shall be payable unto her until her death or remarriage and that this agreement shall be filed in the cause." This contract was made while testimony was being taken to ascertain the faculties of the husband in order to enable the court to decide what would be a proper allowance to the wife as permanent alimony. There is nothing in the record to indicate that there was any fraud or collusion in the divorce proceedings or in this agreement, which, so far as we can judge, was executed in an honest effort to reach a fair equivalent or substitute for the permanent alimony which the errant husband was bound to pay to an injured wife. It will be observed that the agreement to pay the stipulated sum was not limited to the life of the husband, but was to continue until the death or remarriage of the wife. There is no ground for the assumption that the parties, who were acting under advice of their counsel, did not know that the continuation of the husband's obligation to pay after his death was an extension of his duty to pay alimony, which ceases at the death of the husband (*infra*), and so this enlargement in point of time of the husband's obligation to pay alimony was doubtlessly reflected in the amount of the agreed weekly payment.

The agreement was filed and was submitted to the chancellor, who, in granting the wife an absolute divorce, incorporated the agreement of the parties in the decree, and so gave it the court's sanction. The provision in the decree is: "And it is further ordered that said defendant shall pay said complainant as permanent alimony the sum of twenty-five dollars per week, accounting from the date of this decree, until her death or remarriage, or until the further order of this court."

Since the case of *Wallingsford v. Wallingsford,* 6 H. & J. 485, it has been the settled law of Maryland that permanent alimony is a provision by the husband for the wife's support that continues only during their joint lives or so long as they live separate and apart. 2 *Bishop on Marriage and Divorce,* secs. 836, 858; *Emerson v. Emerson,* 120 Md. 584, 590; *Polley v. Polley,* 128 Md. 60, 63; *McCaddin v. McCaddin,* 116 Md. 572; *Newbold v. Newbold,* 133 Md. 170, 175; *Hood v. Hood,* 138 Md. 355, 365; *Blades v. Szatai,* 151 Md. 644, 649. It is equally well established in this state that a final decree of divorce *a mensa et thoro* or *a vinculo matrimonii* may be modified at any subsequent time as to alimony. *Clarke v. Clarke,* 149 Md. 590, 592, 593; *Winchester v. Winchester,* 138 Md. 95, 97; *Braecklein v. Braecklein,* 136 Md. 33, 38. If, however, the allowance to the wife in the decree is the result of a previous agreement between the spouses and does not fall within the accepted definition of alimony, so that it would have been impossible for the chancellor to have allowed permanent alimony as the decree provides, then, notwithstanding the parties and even the court called it alimony, the allowance for the wife in the decree was not alimony, and a court of equity has no power to modify the decree as in the case of an award of alimony. *Infra.* The agreement by the husband to pay the wife a weekly sum of money until her death or remarriage did not limit his payments to the joint lives of the spouses, and hence was not what the court could have decreed as alimony; but this agreement, providing the wife with a weekly

stipend without reference to whether or not the husband survived her or they lived separate and apart, was properly incorporated in the decree, as was determined by *Emerson v. Emerson,* 120 Md. 584, 598, 599, and *Neubold v. Neubold,* 133 Md. 170, 174, 175; *Miller's Eq. Proc.,* sec. 269; 2 *Bishop, Marriage and Divorce,* sec. 885.

When tested by the rules stated, the decree in this case was not for alimony, but was an adoption by the chancellor of a prior agreement between the parties. But, at first, both the parties and the chancellor erroneously treated the agreement and decree alike as having alimony as their common subject-matter, and hence the chancellor concluded the provision of the decree for the payment of the weekly amount with not only the limitation of the duration of the husband's liability to the wife's death or remarriage, which was not within the meaning of alimony, but which was pursuant to the contract; but also with the further ultimate limitation of "until the further order of this court," which was consistent with the theory of an award of alimony, but which was repugnant to the terms of the contract between the spouses. In determining the effect of the decree, the bill, answer and all the other proceedings, including the agreement of the parties, which was filed in the cause, should be considered; and this was done more than two years after the passage of the decree, when the former husband filed a petition asking that the amount of the weekly payments be reduced on the assumption that the decree was for alimony. The wife demurred to this petition of the husband and her demurrer was sustained, the chancellor holding the nature of the decree prevented it from being for alimony, and that its provisions as to the obligations of the husband were not subject to alteration by the chancellor. This ruling was not reversed, and is the law governing the parties to the cause. *State, use of Bruner, v. Ramsburg,* 43 Md. 325, 333, 334; *Rice v. Donald,* 97 Md. 396, 400; *Slingluff v. Stanley,* 66 Md. 220, 226; *Bowers v. Bowers,* 135 Md. 453, 456. Moreover, the decision was a construction of the decree by the tribunal of

its origin, and neither of the parties was in a position to complain, since both were estopped by their agreement from asserting that the scope given the decree was not as they had stipulated it should be when passed by the court. Thus, by rejecting as surplusage the ill-advised clause "or until the further order of this court," the chancellor brought the decree in conformity with the agreement of the parties, and gave to the decree its true import and intended effect by recognizing it as having been founded on contract. *Bernstein v. Hobelman,* 70 Md. 29, 37, 38; *Freeman on Judgments* (5th ed.), sec. 76. Nor does this tribunal find there was any error under all the circumstances in the chancellor's denying relief and dismissing the petition of the husband in conformity with the ruling on the demurrer. *Supra.*

The decision on this demurrer was on March 17th, 1927, and, on the following May 20th, the appellant filed her petition against the appellee, alleging that, since the refusal of his petition for a reduction of the weekly payments, the appellee, although financially able to do so, had declined to pay her anything, and praying that the appellee be attached for contempt in not paying according to the terms of the decree. The chancellor passed an order *nisi* requiring the appellee to show cause. The appellee answered under oath denying his ability to pay, and setting up the defense that, as a matter of law, the chancellor was without power or jurisdiction to compel the payment of any money from the appellee to the appellant, whose remedy was at law. The matter was heard as on a demurrer to the petition, which the court dismissed on the ground that it would not issue an attachment for contempt, since the decree was not for the payment of alimony but for a specific sum of money, which accrued due weekly. This determination was in accordance with the court's first decision.

Unquestionably an action at law is not maintainable in this state to recover a sum of money decreed to be paid by a court of equity within the same jurisdiction. As was said in *Boyle v. Schindel,* 52 Md. 1, 7: "Courts of equity within

their own jurisdiction have full power to issue judicial writs to enforce their decrees with equal economy and despatch as at law." And in section 205 of article 16 of the Code will be found various remedies at the command of chancery for the purpose of executing or compelling the performance and fulfilment of a decree. The remedies enumerated there are ample, but when the decree only directs the payment of money, a party defendant, who has been brought into court under process of contempt to compel the performance of such a decree, may not be imprisoned. *Supra.* See section 38 of article 3 of Maryland Constitution; *Miller v. Gittings,* 85 Md. 601, 618; *Keighler v. Ward,* 8 Md. 253; *Miller's Eq. Proc.,* secs. 242, 244, 270; *Phelps Jur. Eq.,* sec. 124. However, the obligation to pay alimony in a divorce proceeding is not regarded as a debt but a duty growing out of the marital relation and resting upon a sound public policy, and so this obligation may be enforced by attachment of the person for contempt, and the defendant be imprisoned unless he can purge himself of the contempt by paying or by showing that he has neither the estate nor the ability to pay. *Miller's Eq. Proc.,* sec. 244, pp. 303. 304, n. 4; *McCurley v. McCurley,* 60 Md. 185, 189; *Mann v. Mann,* 144 Md. 518, 524; 2 *Bishop, Marriage and Divorce,* secs. 1092, 837; *Feigley v. Feigley,* 7 Md. 537, 563; *Schouler, Marriage and Divorce* (6th Ed.), secs. 1843, 1850, 1853, 1851, p. 2005.

While the fact that the decree in the present case is not for alimony, but only directs the payment of money, prevents the enforcement of the decree by the imprisonment of the defendant for his default, yet the appellant is not without means for compelling the payment of the weekly sum awarded, by such further appropriate processes as are set forth in section 205 of article 16 of the Code. She must have recourse to these remedies for relief, and, in order for her to do so, the order of the chancellor dismissing the appellant's petition will be reversed so as to enable the appellant to apply, within such time as the chancellor shall prescribe on the remand of this cause, for permission to amend her petition of May 20th,

1927, so as to bring it within one of the remedies provided in section 205 of article 16 of the Code.

> *Order of August 18th, 1927, affirmed, with costs to the appellant, and cause remanded with leave for further proceedings under section 205 of article 16 of the Code.*

BOND, C. J., delivered the following separate opinion:

I concur except that I think any decree for performance under future as well as under present conditions is subject to modification to adapt it to the future conditions. Conditions will change and sometimes render enforcement impracticable, the court will not insist upon an impracticable performance, of course, but will act according to conditions as they may be, and thus, whether we avow it or not, the decree will be modified or suspended; and it seems to me this limitation should be recognized in the rule. Compare *Emergency Hospital v. Stevens,* 146 Md. 159, 166; 23 *Michigan Law Rev.* 382.