**Marlin Ferris GOGGANS, also known as M. F. Goggans, Appellant,**

v.

**Reta OSBORN, Appellee.**

**No. 14756.**

United States Court of Appeals
Ninth Circuit.

Oct. 5, 1956.

George B. Grigsby, Anchorage, Alaska, for appellant.

Davis, Renfrew & Hughes, Anchorage, Alaska, Norman S. Menifee, Redwood City, Cal., for appellee.

Before DENMAN, Chief Judge, LEMMON, Circuit Judge, and SOLOMON, District Judge.

SOLOMON, District Judge.

Appellant was adjudged guilty of contempt for his wilful failure to make certain payments required by a "dissolution of partnership" agreement which he and his then-wife executed, which agreement was approved by the court and by reference made a part of the divorce decree. This appeal attacks the jurisdiction of the trial court to enforce the agreement by contempt proceedings.

Appellant M. F. Goggans married appellee Reta Osborn Goggans on December 28, 1946. Three days later they became partners in a painting contracting business known as the M. F. Goggans Co. This business was later expanded to in-

clude the sale of paints at wholesale and retail.

In 1951, the wife filed a suit for divorce in which she alleged that she and her husband owned certain real and personal property consisting of a family home and the partnership business of M. F. Goggans Co. and that she was entitled to an equitable division of such property. She further alleged that, pursuant to an agreement with her husband, she was entitled to $100.00 a week from the business for her living expenses during the pendency of the action. Defendant filed an answer and cross-complaint.

During the trial, the parties executed an agreement which they called a "dissolution of partnership" and in which they "agreed upon a settlement of their property rights and upon a dissolution of the partnership." By this agreement, the wife transferred all of her interest in the partnership business to her husband and retained to herself "household furnishings and fixtures, a 1947 Pontiac automobile * * * and the family home heretofore carried on the books of the partnership as a portion of the partnership assets."

In connection with the house transferred to the wife, the husband agreed to pay a $1,500.00 mortgage and the cost of certain repairs, some of which had already been made. He agreed to pay all the debts and liabilities of the partnership, as well as the taxes on their individual incomes. He also agreed to pay his wife $26,000.00, payable at the rate of $500.00 a month, but he reserved to himself the option of paying from this amount $250.00 a month direct to the W. P. Fuller Company, paint manufacturer, which held a mortgage on the house to secure a $13,000.00 note in connection with partnership indebtedness.

In addition to providing for the wife's attorney's fees and other minor payments, the agreement read: "Except as herein provided, each of the parties to this agreement hereby releases the other party from any claim or obligation against such other party arising out of the business heretofore conducted by the parties or out of the marriage relationship heretofore and now existing between the parties."

This agreement was filed with the court. The divorce decree recited that the "property settlement agreement * * * is hereby approved and adopted by the Court as a property settlement between the parties and * * * by reference is made a part of this decree * * *."

The husband defaulted after having made eight payments of $500.00 each. Sometime later, the wife petitioned the court to hold the husband in contempt for his failure to make the monthly payments provided for in the agreement. The court refused because the decree concerned itself with a property settlement rather than an agreement to pay alimony. However, he did issue a new order directing the husband to pay the wife $1,500.00 plus interest on $9,000.00, the amount then due. Because of the husband's failure to comply with the new order, the wife again petitioned that her husband be held in contempt.

The husband answered that he had no funds or assets and that he had been adjudicated a bankrupt. The court found such averments insufficient to constitute a showing of good cause and declared appellant to be in contempt and ordered him committed until he complied with the new order requiring him to pay the $1,500.00 plus interest on $9,000.00. It is from this order of commitment that the husband appeals.

The propriety of these contempt proceedings, as we shall explain, depends on whether the agreement sought to be enforced was an agreement to pay alimony or a property settlement agreement.

Alimony is an allowance which a husband is required to pay his wife for her maintenance following or pending her divorce or legal separation from him. It may also include an award made for the support of minor children.[1] Although

1. Brown v. Brown, 1916, 222 Mass. 415, 111 N.E. 42.

parties may contract as between themselves concerning the amount of alimony the allowance of alimony is incidental to the divorce procedure and requires the court's intervention to give it validity.

■ A decree providing for alimony, whether or not based upon a contract, may be modified or terminated upon the death of the husband,[2] the remarriage of the wife[3] or a change in the financial condition of the parties.[4] Bankruptcy will not relieve a husband of his obligation to make alimony payments.[5] For the wilful refusal of the husband to pay alimony, contempt proceedings will lie.[6]

These consequences flow from a decree for the payment of alimony because the duty to pay alimony, as well as support money for children, is public in nature.[7] The community as a whole is vitally concerned that families shall not be left destitute by irresponsible husbands or fathers. The extent of this public interest is revealed in the fact that enforcement of a decree requiring the payment of alimony or support money has been held to be outside constitutional prohibitions against imprisonment for debt.[8]

■■ A property settlement agreement deals with the division of property belonging to a husband and wife. A wife is free to settle her claims against her husband's property by private agreement.[9] For a consideration, she may waive all claims for support.[10] A decree incorporating a property settlement agreement gives rise to legal consequences which are different from those involving alimony.

■■ The provisions of a property settlement agreement are governed by the law of contracts. When approved by the court, they may not be modified without the consent of the parties unless there was fraud or collusion.[11] The rights and obligations they create survive the parties[12] and are not affected by changing conditions such as the remarriage of the wife or inability of the husband to pay.[13] They may be discharged by bankruptcy.[14] The payments cannot be enforced by contempt proceedings.[15]

■ The agreement involved in the present case was called a "dissolution of partnership" by the parties and was referred to and treated by them as a property settlement agreement. It was likewise referred to and treated by the court in the same manner in both the findings of fact and the decree of divorce. Although a court is not bound to accept the designation given by the parties as conclusively determining the true character

2. International Trust Co. v. Liebhardt, 1943, 111 Colo. 208, 139 P.2d 264, 147 A.L.R. 700.

3. Warrington v. Warrington, 1938, 160 Or. 77, 83 P.2d 479; Southworth v. Southworth, 1897, 168 Mass. 511, 47 N.E. 93.

4. Brown v. Brown, 1916, 222 Mass. 415, 111 N.E. 42.

5. Audubon v. Shufeldt, 1901, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009.

6. Tessmer v. Tessmer, 1933, 261 Mich. 681, 247 N.W. 93.

7. Holloway v. Holloway, 1935, 130 Ohio St. 214, 198 N.E. 579, 154 A.L.R. 439.

8. Ibid; See Dickey v. Dickey, 1928, 154 Md. 675, 141 A. 387, 58 A.L.R. 634.

9. Schwartz v. Durham, 1938, 52 Ariz. 256, 80 P.2d 453.

10. Hagen v. Hagen, 1951, 193 Or. 369, 238 P.2d 747.

11. Hall v. Hall, 1939, 105 Colo. 227, 97 P. 2d 415; Belting v. Marschner, 1928, 245 Mich. 111, 222 N.W. 137.

12. Parker v. Parker, 1924, 193 Cal. 478, 225 P. 447.

13. Puckett v. Puckett, 1943, 21 Cal.2d 833, 136 P.2d 1.

14. Fernandes v. Pitta, 3rd Dist.1941, 47 Cal.App.2d 248, 117 P.2d 728.

15. State ex rel. Foster v. Superior Court, 1937, 193 Wash. 99, 74 P.2d 479; Dickey v. Dickey, 1928, 154 Md. 675, 141 A. 387, 58 A.L.R. 634. For a review of the authorities see Annotation, 1945, 154 A.L.R. 443.

Only Colorado and California appear to take a contrary view. For discussions of the California cases see ibid at 483 and California Divorce Agreements—Alimony or Property Settlement? 2 Stanford L.Rev. 731 (1950).

of an agreement,[16] we find that this agreement is what it purports to be—a property settlement agreement.

From this it follows that the obligation to make money payments called for in this agreement could not be enforced by contempt proceedings. The trial court recognized this in its refusal to enforce the original decree by contempt proceedings. However, the court erred in assuming that the second order to the husband directing him to pay a specific sum was not subject to the same inhibition. The test is not the words used in the order, but rather the substance of the obligation being enforced. If the decree is based upon a property settlement and not an alimony agreement, contempt proceedings may not be used to enforce the decree or to enforce any subsequent order which may be issued requiring the husband to make the payments specified in the property settlement agreement or in the decree itself.

Reversed.

---

16. Claude v. Claude, 1951, 191 Or. 308, 319, 228 P.2d 776, 230 P.2d 211.