113 So.2d 872 (1959)
Margaret PENTLAND, Appellant,
v.
Robert PENTLAND, Jr., Appellee.
No. 862.
District Court of Appeal of Florida. Second District.
July 24, 1959.
Rehearing Denied August 24, 1959.
Linton R. Lovett of Sinclair & Nicholson, Miami, for appellant.
Leon H. Handley of Gurney, McDonald & Handley, Orlando, and Berryhill, Leaird & Tedder, Ft. Lauderdale, for appellee.
REVELS, P.B., Associate Judge.
This is an appeal from a decree interpreting and modifying a final decree entered in the suit for divorce between appellee and appellant.
The plaintiff, Robert Pentland, Jr., and the defendant, Margaret Pentland, entered into a Separation and Property Division Agreement on March 10, 1953. This agreement provided for certain stock to be placed in trust to provide income to the defendant and also provided that a guardianship fund had been established for the minor daughter of the parties, Margaret Ann Pentland, as beneficiary.
Also on March 10, 1953, the same date as the above agreement, two other instruments were executed between plaintiff and *873 defendant. One entitled "Supplement to Separation and Property Division Agreement" was executed to clarify the original agreement, but also provided that plaintiff would pay defendant's attorney's fees in the event the wife had to bring suit to enforce either of these agreements. The third document executed on the same date, entitled "Agreement," provided that the plaintiff would make certain annual gifts of $3,000 to defendant for the period 1953-57, and thereafter $1,000 per year so long as the wife lives and remains unmarried.
The plaintiff and defendant were divorced on October 14, 1953, after Decree Pro Confesso was entered against the defendant, and Plaintiff incorporated into the final decree only the Separation and Property Division Agreement. The second and third instruments, supra, were not included.
In June, 1955, a 100% stock dividend was declared on the stock in the trust setup under the aforementioned agreement. The plaintiff filed a petition in the lower court seeking interpretation and modification of the final decree entered in the suit for divorce, and particularly seeking the court's interpretation relating to a trust established by plaintiff into which 3,000 shares of Armco Steel stock was placed, which stock, due to the stock split, had increased to 6,000 shares; and further seeking an order of the court directing the return to him of the excess 3,000 shares. Various pleadings were filed, including allegations of the wife that maintenance and child support payments were past due, and a request for attorneys' fees.
A special master was appointed and after his findings of fact and law were submitted to the chancellor, the lower court entered a decree which held that the plaintiff was entitled to the return of all stock in excess of 3,000 shares; that the two documents in addition to the "Separation Agreement" be incorporated into the original decree of divorce; that the defendant is entitled to $5,000 for arrearage in monthly child support; that defendant is entitled to $5,000 for arrearage of annual gifts and plaintiff is to continue to make the annual gifts; and that plaintiff pay defendant's attorneys' fees.
Several errors have been assigned and cross-assigned. However, we consider those directed to the return of the stock and enforcement of the annual gifts "Agreement" to be determinative of this appeal.
The indenture of trust under which the plaintiff and the Florida National Bank and Trust Company of Miami were designated as trustees provides in part:
"Now, Therefore, in consideration of the premises and in consideration of the acceptance by the Trustees of the trust hereby created, and Grantor has conveyed, assigned, transferred, set over and delivered, and by this Indenture does hereby convey, assign, transfer, set over and deliver unto the Trustees for the term of the trust hereby created the following securities, to-wit:
"Three thousand (3,000) shares of the Common Stock of Armco Steel Corporation, evidenced by Certificates Nos.
to have and to hold the same unto the said Trustees, their successors or assigns, in trust nevertheless, upon the terms, provisions, conditions and limitations and for the uses and purposes and subject to the power hereinafter set forth.
"Term of The Trust
"The trust estate hereby created and this trust Indenture shall be for the term of the life of Margaret McLin Pentland. Upon her death the trust estate hereby created shall be forthwith transferred, conveyed and delivered to Robert Pentland, Jr., his heirs or assigns."
*874 By the terms of the trust indenture the conveyance to the trustees of the complete legal title to the 3,000 shares of stock is clear and unambiguous. Thus, as of the execution of the trust the res or principal consisted of 3,000 shares of stock.
When the Armco Corporation issued a two-for-one stock split, these additional 3,000 shares then became a part of the trust principal.
Florida has enacted the Uniform Principal and Income Law, being Chapter 690, Florida Statutes, F.S.A. Section 5 of the Uniform Principal and Income Act appears almost verbatim in Florida Statutes, § 690.06, F.S.A., which provides:
"(1) All dividends on shares of a corporation which form a part of the principal and are payable in the shares of the corporation shall be deemed principal."
Logic would therefore dictate that since the trustees were the legal owners of the original principal of the trust, under Florida Statutes they are likewise the legal owners of the shares received as dividends which are deemed principal.
The appellee-plaintiff agrees with the foregoing reasoning but contends that under the "Separation Agreement" and Trust Indenture, plaintiff intended that defendant was to receive dividends from only 3,000 shares of stock, therefore the excess 3,000 shares should be permitted to be withdrawn from the trust.
Although the courts have devised numerous principles to aid in ascertaining the intent of the settlor under ambiguous indentures, these rules of interpretation vanish when the trust deed clearly expresses the intent. Travis v. Ashton, 156 Fla. 529, 23 So.2d 725. Upon examination of the documents in the instant case, we find a clear intent of the settlor set forth therein.
The "Separation Agreement" contains the following provision:
"If the trust in any event produces more than $12,000 (or if the wife marries another, more than $6,000) in any year, the wife shall in such event receive the overplus, and if it produces less, the husband or his estate shall as aforestated supply the deficiency by maintaining the agreed quarterly payments." (Emphasis added.)
The Indenture of Trust contains the following provision:
"(d) Should the trust estate produce more than the sum of Three Thousand ($3,000.00) Dollars per quarter after the payment of the costs and expenses of the administration of the trust, then the Trustees shall pay the said Three Thousand ($3,000.00) Dollars per quarter to the said Margaret McLin Pentland and shall accumulate the balance, and at the beginning of the next calendar year, pay over said balance remaining after payment of the quarterly payments for the past calendar year, to the said Margaret McLin Pentland, it being intended that she receive the full net trust income in any event, even though the same may exceed the promised quarterly payments of $3,000.00 per quarter." (Emphasis added.)
Both the "Separation Agreement" and the Indenture of Trust were executed on the same date and the Indenture of Trust recites that:
"(a) Robert Pentland, Jr. and Margaret McLin Pentland, his wife, have this day and simultaneously herewith entered into a support and property division agreement, by the provisions of which an irrevocable trust estate was agreed to be created as hereinafter set forth;" (Emphasis added.)
Regardless of the intention of the plaintiff-settlor now, the disposition of any excess dividends over the agreed amount per year to be paid defendant is clearly set forth in the above quoted documents. In *875 the absence of fraud; accident or mistake, the general rule is that oral evidence is not admissible to contradict or vary the terms of a written instrument. Hoopes v. Crane, 56 Fla. 395, 47 So. 992; Peplax Medicine Co. v. Tampa Drug Co., 88 Fla. 473, 102 So. 632; Florida Moss Products Co. v. City of Leesburg, 93 Fla. 656, 112 So. 572, 32 C.J.S. Evidence § 852.
The only provisions of the Indenture of Trust concerning withdrawal or modification of the principal are as follows:
"2. (e) Should the wife marry some other person, either after a divorce from or the death of Robert Pentland, Jr., then the guaranteed amount to be paid the wife pursuant to this trust agreement shall be reduced to Six Thousand ($6,000.00) Dollars per annum in installments of One Thousand Five Hundred ($1,500.00) Dollars per quarter, and Robert Pentland, Jr. or his personal representative, heirs or assigns shall have the right to reduce the trust estate aforesaid by the withdrawal of one-third (1/3) of all securities then remaining in and under said trust, said withdrawal to be by assigning one-third of each type of security to the said Robert Pentland, Jr., his heirs or assigns. In the event of such remarriage, the payments of Six Thousand ($6,000.00) Dollars per annum, payable as aforesaid, shall be continued for so long as the said Margaret McLin Pentland shall live.
"3. The Trustees shall keep and preserve the trust estate so as to produce the maximum amount of income during the term of this trust. The power, however, is hereby granted to the Trustees to sell the stock hereinabove described and reinvest the proceeds of such sale in more profitable, safe and desirable securities. This power, however, shall not be exercised unless both of the Trustees are in agreement as to the advisability of so doing, and it shall be the duty of the Trustees to exercise due care and discretion in selling and re-investing the proceeds of sales to the end that safe, sound and profitable securities shall at all times form the corpus of this trust estate."
The withdrawal of any of the principal of the trust for any reason other than those specified in the Indenture would be a modification of the trust by the court which is only permitted in an emergency situation that makes the action of the court indispensable to the preservation of the trust. 89 C.J.S. Trusts § 87(b). Such a situation is not present in the instant case.
We conclude at this point that by the Indenture of Trust the Trustees received a property interest in the corporation represented by 3,000 shares. The stock split did not increase the value of that interest. The 6,000 shares represented no greater net worth in the corporation than the 3,000 shares would had no split occurred. The dividends on the 6,000 shares are neither more nor less than normally would have been declared on the 3,000 shares had there been no stock split. The dividends are now being paid upon 6,000 shares instead of the original 3,000 shares and to allow the plaintiff to withdraw 3,000 shares would infringe upon defendant's right to receive all income earned by the stock per year which the Separation and Property Division Agreement and the Trust instrument guaranteed to her at the time of the execution of the instruments.
After considering the clear import of the documents and the foregoing legal principles in light of the circumstances of the parties, we conclude that the chancellor was in error in holding that plaintiff was entitled to all stock in excess of 3,000 shares free and clear of the terms of the Indenture of Trust.
The other assignment of error which we consider to merit discussion on *876 this appeal concerns the third document, entitled "Agreement", which was executed on the same date as the other documents previously discussed.
The "Agreement" referred to stated:
"For and in consideration of the execution of the Separation and property Division Agreement executed simultaneously herewith, the husband agrees that he will forthwith transfer to the wife his membership or all of his right, title and interest therein, to the Surf Club, located in Dade County, Florida;
"And the husband further agrees that he will make gifts to the wife of Three Thousand ($3,000.00) Dollars per year for the years 1953, 1954, 1955, 1956, and 1957, and thereafter the sum of One Thousand ($1,000.00) Dollars per year for so long as the wife lives and remains unmarried after a divorce from the husband, or remains unmarried after the death of the husband.
"Should the husband predecease the wife, then the said gifts shall be made by the personal representative of the estate of the husband and such gifts shall be a charge and lien upon the estate of the husband."
Although a promise to make a future gift is not generally binding on the promisor because there is no consideration for the promise and the promise can be withdrawn at any time before the gift is fully executed, the instant case does not completely fall within this rule. The lower court found, as has this court, that the three agreements, namely the Separation and Property Division Agreement, the Supplement to Separation and Property Division Agreement and the Agreement, constitute the entire agreement between the parties. The "Supplement" and "Agreement" refer to the "Main Agreement." The three agreements all bear the same date, and all state that they were executed simultaneously.
On the question of what principles apply in construing such agreements, it is stated in Sedell v. Sedell, Fla.App. 1958, 100 So.2d 639, 642:
"Provisions of a separation agreement constituting a final settlement of the rights which each party has in property accumulated during their marriage are to be construed in the same manner as any other contract." (Emphasis added.)
The Florida Supreme Court, in interpreting a property settlement agreement, stated in Clark v. Clark, Fla. 1955, 79 So.2d 426, 428:
"The law in this jurisdiction is well settled that property settlement agreements between husband and wife, made in good faith, are valid and legal and should be construed and interpreted as other contracts. Underwood v. Underwood, Fla. 1953, 64 So.2d 281, and the authorities there cited. No question is raised here concerning the legality of said agreement. The only question presented is the interpretation of the provisions which we have quoted at length. In this, as in other contracts, our concern is the determination of the intention of the parties from the language used, consideration of surrounding circumstances, the objects to be accomplished, the other provisions in the agreement which might shed light upon the question and the occasion and circumstances under which it was entered into."
Under general principles of contracts, an "Agreement" providing for annual sums to be paid the wife would be a valid enforceable portion of the overall agreement between the parties. See 12 Am.Jur. Contracts, sec. 246, pp. 781-82 where is stated:
"The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course *877 of the same transaction will be read and interpreted together, it being said that they are, in the eye of the law, one instrument."
The obligation of the husband is spelled out in detail in this "Agreement". Even though these annual sums are termed "gifts", this does not change the obligation of the husband when there is an adequate consideration given in return therefor. This consideration on the part of the wife has been fully given and cannot be recovered without renegotiating the entire property settlement.
In Underwood v. Underwood, Fla. 1953, 64 So.2d 281, 288, the husband was seeking a modification of a property settlement agreement alleging that since the agreement provided for "alimony", a showing of changed circumstances would justify the court modifying the agreement. The Supreme Court stated in denying the modification petition:
"At the very outset we dispose of the legal effect of the use of the word `alimony' in the agreement and decree. It is not what it is called but what it is that fixes its legal status. It is the substance and not the form which is controlling. In the case of International Trust Co. v. Liebhardt, 111 Colo. 208, 139 P.2d 264, 147 A.L.R. 700, the court held that the use of the word alimony was not conclusive and that it was substance and not form which guided the court. So far as agreements of the kind under consideration is concerned where periodic payments are to be made the wife for the period of her life and is not limited to the joint lives of the parties, the legal effect of such payments are that they constitute property settlements and not alimony. By its very nature, alimony is limited to the lifetime of the husband. See Spear v. Spear, 158 Md. 672, 149 A. 468, from which we quote with approval in Vance v. Vance, supra [143 Fla. 513, 197 So. 128]; Emerson v. Emerson, 120 Md. 584, 87 A. 1033; Newbold v. Newbold, 133 Md. 170, 104 A. 366; Dickey v. Dickey, 154 Md. 675, 141 A. 387, 58 A.L.R. 634; North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061." (Emphasis added.)
As has been pointed out, this promise to make these so called "Gifts" were adequately supported by the consideration of the over-all agreement, however, in addition to that, this "Agreement" provided for these annual "gifts" to be a lien on the estate of the husband. "A rose by any other name is still a rose," this maxim applies here regardless of the language used by the scrivener in the drafting of the paper termed "Agreement", it is part and parcel of the overall Separation and Property Division Agreement, and after considering the substance of this "Agreement" we are compelled to conclude that it is an enforceable and binding portion of the over-all property division agreement.
We hold, therefore, that the lower court must be reversed in part as to the determination that the plaintiff is entitled to the excess 3,000 shares of Armco stock but affirmed as to the remaining portions of the decree.
Reversed in part and affirmed in part.
KANNER, Acting Chief Judge, and SHANNON, J., concur.