## REICHHART *v.* BRENT

[No. 403, September Term, 1966.]

*Decided June 6, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, McWILLIAMS and FINAN, JJ.

*Henry L. Conway, Jr.* and *Alfred F. Walker* for appellant.

*Leo W. Doyle* for appellee.

MARBURY, J., delivered the opinion of the Court.

June Elizabeth Brent, appellee, brought suit in Circuit Court No. 2 of Baltimore City for specific performance of a covenant contained in a property settlement agreement entered into by appellant, Theodore E. Reichhart, formerly the husband of appellee, and appellee and incorporated in a decree for divorce. The court ordered that appellant was to resume payments for the maintenance of insurance policies pursuant to the property settlement agreement. From this order, the appellant appealed.

On August 31, 1948, appellee was divorced a vinculo matrimonii from the appellant. Incorporated by reference in the decree for divorce were the terms of a property settlement agreement which had been executed on July 29, 1948. At the time the agreement was entered into appellant was represented by his attorney. The settlement agreement provided that Mr. Reichhart was to pay $65.00 per week to appellee; $36.00 of which was for permanent alimony for her life or until she was remarried; and $18.00 of which was for the support of the infant child of the parties until he reached the age of twenty-one years, or until his death prior to that time, or until he married, or until he was fully self-supporting otherwise. The remainder, $11.00, was to be for the payment of insurance premiums by the appellee on $16,566 of life insurance covering the life of the appellant, the beneficiary of which was the appellee if she

survived appellant; and if she did not survive him, the child of the parties was to be the beneficiary. The insurance policies referred to in the agreement had been purchased before the parties filed suit for divorce.

On July 1, 1945, Mr. Reichhart was issued a $5,000 life insurance policy with an insurance company. It provided that if he died during the first twenty years of the policy, then the $5,000 principal amount was payable to the beneficiary at the twentieth anniversary of the policy, plus income of $50.00 per month from the date of death to the twentieth anniversary. After twenty years, if he were living, then upon payment of a reduced premium the policy would continue in full force and effect, but without the monthly income payments at his death. The premium was thereby reduced from $12.10 to $9.90 monthly. The policy was to continue in effect until his death and was conditioned only upon payment of the premiums, the larger premium the first twenty years and the smaller premium after the twenty year period.

Appellant purchased the same type of insurance policy on April 1, 1946, when he took out another policy with the same company in the amount of $2,500, with an income payment of $25.00 per month, plus a lump sum of $2,500 at the twentieth anniversary date, to the beneficiary if the insured died during the first twenty years; and if he did not die during that period, then the income provision was eliminated, and the premium was reduced from $7.20 to $5.68 per month.

The third policy with the same company was purchased on March 20, 1947, with $5,000 face amount, and an income of $50.00 per month payable to the beneficiary if appellant died within the first twenty years. All of these income payments were in addition to the principal amount being payable to the beneficiary. If, after twenty years, which was March 20, 1967, appellant was still living, then the annual premium was reduced from $168.85 to $132.30.

Slightly less than one year after Mr. Reichhart had purchased the third policy, he filed a bill for divorce against his wife alleging that she and he had been separated since November 19, 1947. Thus, the separation would have begun about eight months after he took out the last policy.

On January 27, 1949, appellant made an absolute assignment of each one of these three policies to his wife, who has had them in her possession since then. When he assigned the policies he again was represented by counsel. On March 29, 1951, he obtained modification of the 1948 divorce decree due to the remarriage of appellee, and $36.00 of the weekly payment was eliminated by the decree. However, the decree continued to provide for the payment of the sum of $11.00 for insurance preminums, as well as for the payments for the support of the child.

Mr. Reichhart continued to make the premium payments and to pay the amount required for the support of their child until the child reached his majority in 1962. At that time appellant paid only that portion required for the insurance premiums. He continued to make these payments until August 1965, at which time he refused to make further payments despite repeated demands by appellee.

Appellant raised two contentions: (1) The lower court did not have jurisdiction over the subject matter of this suit since it was constitutionally prohibited from enforcing its order of specific performance; and (2) the lower court abused its discretion in ordering specific performance.

The first contention was based upon the assertion that a contempt proceeding was the only effective means of compelling appellant's obedience to the order; and since such a proceeding eventually might have resulted in an imprisonment for debt, the court was constitutionally prohibited from enforcing such an order. In a footnote in his brief, appellant asserted that sequestration, attachment or execution would be useless because of the impossibility of knowing how much property to encumber in order to satisfy the order.

If the allowance to the wife in the divorce decree was the result of an agreement between the husband and wife and not within the definition of "alimony," a court of equity has no jurisdiction upon non-payment to attach for contempt.[1] *Foote*

---

1. For the purposes of this decision it is assumed that Article III, Section 38 of the Maryland Constitution, as amended in 1950, providing that either an agreement or a decree for the support of a wife or alimony shall not constitute a debt, has no application to the 1948 agreement nor to the 1951 amendatory decree.

*v. Foote,* 190 Md. 171, 57 A. 2d 804; *Bushman v. Bushman,* 157 Md. 166, 145 Atl. 488; *Dickey v. Dickey,* 154 Md. 675, 141 Atl. 387. Even though the portion of the decree providing for the maintenance of the life insurance policies may not have been alimony, the wife is not without means for compelling payment of the weekly sum awarded by recourse to sequestration, execution and attachment. *Bushman v. Bushman* and *Dickey v. Dickey,* both *supra.* Maryland Rule 685 a and b.[2] See also Sykes and Tabor, *Maryland Rules and Practice,* Md. L. Encyc., Procedural Forms, Sections 1641-42, page 350-51. Nor is the court powerless to use these means of enforcing its order merely because the actual damages are unknown. The equity court has power to enforce separation and property settlement agreements, and this power is at least implicitly granted in the provisions of Code (1966 Repl. Vol.), Article 16, Section 28. See *Zouck v. Zouck,* 204 Md. 285, 104 A. 2d 573.

*Zouck* involved an appeal by the husband from a decree ordering him to perform the obligation he had assumed in a separation agreement executed several years before by him and his wife. The agreement provided that the husband was to pay $25 a week for the support of their daughter and to assign

---

2. Rule 685. Enforcement of Decree and Order . . . . . Equity
   a. Attachment—Sequestration—Fiere Facias—Injunction.

The court may, for the purpose of executing a decree, or to compel the defendant to perform and fulfill the same, issue attachment of contempt, attachment with proclamations and sequestration against the defendant, and may order an immediate sequestration of the real and personal estate and effects of the defendant, or such parts thereof as may be necessary to satisfy the decree and clear the contempt, or may issue a *fiere facias* against the lands and tenements, goods and chattels of the defendant, to satisfy the said decree, or may issue an attachment by way of execution against the lands, tenements, goods, chattels and credits of the defendant, to satisfy the said decree; or the court may cause, by injunction, the possession of the estate and effects whereof the possession or a sale is decreed, to be delivered to the plaintiff, or otherwise, according to the import of such decree, and as justice may require.

b. Sequestration.

In case of sequestration, the court shall order payment and satisfaction to be made out of the estate and effects so sequestered, according to the true intent and meaning of the decree.

certain insurance policies to the daughter. The husband never complied with the agreement. Although the husband did not seriously question the right of the court to order the assignment of the insurance policies, and the court did not refer to the maintenance of the insurance policies, it said:

"* * * [T]he court had power to enforce specifically the agreement between husband and wife and did not abuse its discretion under the established rules when it did so, either as to the arrearages or as to the weekly payments to be made in the future. Traditionally, equity has had, and exercised, jurisdiction as to separation agreements between husbands and wives and, in appropriate cases, has specifically enforced payment of maintenance, including both that due and unpaid and that to be paid in the future."

See also *Oles Envelope Corp. v. Oles,* 193 Md. 79, 65 A. 2d 899 (An equity court may order the sequestration of the husband's property and require the proceeds therefrom to be paid toward any unpaid amount due the wife upon a decree awarding her permanent alimony of $425 per month.), and *McNamara v. McNamara,* 256 App. Div. 370, 10 N. Y. S. 2d 94 (1939).

This case is, therefore, within the jurisdiction of the equity court which has the power to enforce the insurance maintenance provision of the separation agreement by an order of specific performance which, if appellant refuses to obey, may be enforced by the proceedings (except imprisonment for contempt) provided in Rule 685.[3]

The second and final contention of appellant was that the lower court abused its discretion in ordering specific performance, because appellant mistakenly thought that the insurance policies were each for a period of twenty years from date

---

3. The rule gives powers to the equity court similar to those granted by statute, Code (1951), Art. 16, § 222, which contained language giving full power to the court in protecting its integrity while specifically recognizing the prohibition against imprisonment. " * * * [W]here the decree only directs the payment of money, no defendant shall be imprisoned, * * *."

of issue. He says it was his intention to keep them in force during that period and not to keep his life insured and pay the premiums for the rest of his life.

The mistake of the appellant and the modification which it would introduce into the written contract must be clearly established by cogent evidence, and a party is not permitted to void or escape from such a contract, formally signed and delivered by him, upon any parol evidence of his own mistake, unless such evidence is sufficient to create an undoubted conviction in the judicial mind of the court. Pomeroy, *Specific Performance of Contracts,* Section 253, page 607 (3d ed. 1926); Miller, *Equity Procedure,* Section 669, page 776 (1897).

At the bottom of the first page of the first $5,000 policy there was printed in bold type, "Premiums Payable Until Policy Anniversary Nearest Age 85 or Until Prior Death." At the bottom of the first page of the other two policies in bold type was printed, "Premiums Payable During Life." In all the policies it was provided that the premiums were to be at a certain rate for the first twenty years of the particular policy's life; and for the remainder of the policy's life, the premiums were to be at a reduced rate. The separation agreement provided that the $11.00 portion of the weekly payment "will be for the payment of insurance premiums by the party of the first part [the wife] on $16,566 of life insurance covering the life of the party of the second part [the husband], * * *." Appellant obtained these policies a substantial time before he filed suit for divorce. He was represented by counsel at the execution of the separation agreement and at the assignment of the policies.

As the lower court pointed out:

"There is nothing in that language whatever which states that after the son reaches the age of twenty-one, or after the expiration of twenty years, the insurance is to be canceled. There is no hint of any cancellation whatever.

"The divorce decree was granted to the wife on August 31, 1948. The provisions of this property settlement were expressly incorporated in that decree, and again, there is no hint whatever that payments should

cease when the son reaches the age of twenty-one years or when the policies become twenty years old.

"On January 27, 1949, he made an absolute assignment of each one of these three policies to his wife. She has had them since January 27, 1949. And again, there is no hint or language of any kind in the assignment that would lead the Court to believe that this liability for the payment of the premiums would cease after the policies became twenty years of age or the son became twenty-one years of age.

"At his instance, on March 29, 1951, he obtained modification of the 1948 decree due to the remarriage of his wife, and the $36 weekly allocated to her support was eliminated by the modified decree of March 29, 1951.

"Now, if his liability for payment of the premiums was to cease at any time, why wasn't the point brought up then? But, again, we have the absolute, clear, and unmistakable language that he is to continue to pay the $11 per week for the payment of the premiums on these policies. Nowhere in this history on all of these dates has there been any language of any kind or any meaning that one can read into the language of what Mr. Reichhart now says he understood the 1948 agreement to mean.

\* \* \*

"It seems to me that where the wording is so clear, a reasonable person must be held to intend to obligate himself to do what the agreement and what the decree, absolutely without any question, says he has to do."

The evidence introduced by appellant on the issue of mistake was not sufficient to convince the court below that the mistake was such as to prevent specific performance of the agreement. Unless the judgment of the court was clearly erroneous it will not be set aside on the evidence. Rule 886 a. We think the judge below was justified in his conclusions so that we will not disturb the result.

At the date of the order appealed from, the third policy had not reached its twentieth anniversary so that the order will be affirmed without prejudice to the appellant to apply for modification of the order so as to provide for an adjustment of the weekly amount necessary to keep the policies in force at the reduced rate of premium provided in each of the policies, all of which have now reached the twentieth anniversary.

*Order affirmed, with costs.*