# GRONER *v.* DAVIS

[Nos. 221 and 222, September Term, 1970.]

*Decided January 18, 1971.*

*Motion for rehearing filed in No. 222 February 16, 1971; denied March 1, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Samuel B. Groner,* with whom was *Elizabeth Guhring* on the brief, for appellant.

*Harry W. Lerch,* with whom were *David Macdonald* and *Lerch, Pillote & Lerch* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The two appeals in this case were consolidated by us and were briefed and argued together. No. 221 is an appeal from a summary judgment entered on May 21, 1970, by the Circuit Court for Montgomery County (Clapp, J.) in favor of the appellee, Jack Davis, defendant below, for costs in an action at law filed by the appellant, Beverly Anne Groner (the former wife of the defendant, Jack Davis), to recover money advanced by Mrs. Groner for

the university education of Lewis Davis, the son of the parties. One of the principal issues in this law action was the alleged misinterpretation by the lower court of a Separation Agreement and Property Settlement between the parties dated November 28, 1962 (Separation Agreement). The second case arises out of an equity suit in which Mrs. Groner filed a bill of complaint on July 25, 1969, for child support and specific performance of the Separation Agreement in connection with the support and maintenance of Andrew Davis, the youngest child of the parties. The parties were divorced a vinculo matrimonii in 1962 and both parties have since remarried. No. 222 is consequently an appeal from the lower court's (Miller, J.) decree of May 25, 1970, which dismissed appellant's prayer for specific performance regarding the maintenance of life insurance policies by the appellee; dismissed appellant's prayer for payment by the appellee of one-half the costs of orthodontia and ordered that the appellee should pay appellant $157.50 per month for the support of Andrew. Timely appeals were taken to this Court by Mrs. Groner from the respective judgment and decree.

The basic facts relevant to the two cases may be considered together. Prior to the divorce a vinculo matrimonii of the parties in December 1962, they entered into a Separation Agreement on November 28, 1962. At that time the parties had three children: Morrilou, then twenty years of age; Lewis, then thirteen years of age; and Andrew, then six years of age. Mrs. Groner—then Beverly Anne Davis and referred to in the Separation Agreement as "Wife" — was a member of the Bar of Maryland and engaged in the active practice of law. Her then husband, Jack Davis, referred to in the Separation Agreement as "Husband," was the sole owner and operator of Brook Farm Restaurant in Chevy Chase, Maryland and had operated that business for a number of years.

The pertinent provisions of the Separation Agreement are as follows:

"WHEREAS, the parties hereto, having agreed to live separate and apart, desire to enter into an agreement under which fair and reasonable provision shall be made for the support of their children and under which there will be a complete, final, and effective settlement of their respective rights in and to the property of each other and the property held by them jointly, and a full relinquishment of all the rights, interests, and claims which the one party may otherwise have upon the property of the other:"

\* \* \*

"1. As concerns the three minor children of the parties, Husband and Wife agree to the following provisions, to apply until each child shall have reached the age of 21 years or shall otherwise have become emancipated:

"a. Custody of the minor children of the parties; namely, Morrilou, Lewis, and Andrew, shall be in the Wife, with the right, and the privilege, in the Husband to visit and be with his children at reasonable times and places.

"b. Husband agrees to pay to Wife the sum of $175.00 per month on the Eighth day of each month, commencing January 8, 1963, for the support of Lewis and Andrew; such sum being understood to include such support as Wife may require from time to time for Morrilou. Husband shall be entitled to utilize Federal and State tax exemptions for Lewis and Andrew, and Wife agrees to execute such documents as may be necessary from time to time to effect such utilization.

"c. Husband agrees to carry medical insurance, both hospitalization and surgical, for the benefit of the minor children of the parties. Husband and Wife agree that they will equally bear the cost of extraordinary medical and dental expenses for such minor children.

"d. Husband agrees to maintain in full force and effect, without further or future encumbrance, the following insurance policies:

"a. Bankers Life Policy No. 1614384, Life, $15,000.00.
"b. Prudential Insurance Policy No. RCPK 22 155 655, Life, $15,000.00.
"c. Sun Life of Canada Policy No. 5158005, Life-Endowment.

"Husband agrees as soon as practicable to cause the named beneficiary in the above policies to be changed to Beverly A. Davis, as trustee for Morrilou, Lewis, and Andrew Davis, equally, or the survivor or survivors thereof. If Wife so requests, Husband shall present receipted bills as evidence of the payment of the premiums on such policies."

* * *

"VII. Wife agrees, commencing with January 1, 1963, to release and discharge Husband from any and all obligations of support, and from all other claims, rights, and duties arising out of the marital relation, other than as herein agreed, and agrees that she will not at any time thereafter contract any debt or charge or liability for which Husband shall or may become personally liable or answerable, and Wife agrees to save Husband harmless therefrom." [1]

In accordance with the terms of the Separation Agreement, Mr. Davis paid $175.00 per month for the support of the two sons, Lewis and Andrew, until Lewis became 21 years of age and emancipated, whereupon he reduced his support payments by one-half, to $87.50 a month. Mrs. Groner between 1966 and 1970 had expended $14,000 for

---

1. This section appeared in the Separation Agreement to be titled Paragraph VII and was so referred to in Judge Clapp's Opinion. Proper numerical order would indicate that it was actually intended to be titled Section IV.

the college education of Lewis, for which, she alleged, Mr. Davis had contributed a total of $237.50.

Elaborate testimony was taken before the Domestic Relations Master and later before Judge Miller in regard to the cost of maintaining Andrew, the earnings of the parties and other relevant matters. It is not necessary to set forth in detail the many items of proof. Our examination of the record in the case indicates to us that Judge Miller correctly determined from the evidence that the reasonable cost of maintaining Andrew was $246.00 a month. Mrs. Groner believes this amount to be too low in view of her budget for Andrew's maintenance of $424.-75; Mr. Davis, on the other hand, believes it to be "on the high side," but filed no cross-appeal in the case.

The lower court found from the evidence—properly in our opinion—that Mrs. Groner had earnings of $7,600.00 a year and Mr. Davis had yearly earnings of $13,200. Judge Miller found from the evidence that Mrs. Groner had agreed to contribute to Andrew's support and apportioned the $246.00 a month between the parties in proportion to their annual earnings so that Mr. Davis would pay, on that basis, $157.50 a month for the support and maintenance of Andrew. Other relevant facts will be mentioned when the various points raised are later considered in this opinion.

### Appeal No. 221

Mrs. Groner filed an action at law against Mr. Davis on February 24, 1970, in which she sought reimbursement for monies expended by her for the university education of Lewis in the amount of $14,000 from April 1, 1966, to the date of filing the declaration. She alleged that Lewis' university education "was and is a necessity" to Lewis and is due and owing by the defendant to plaintiff. Mr. Davis filed two general issue pleas and a plea of the three year statute of limitations. He later filed a motion for summary judgment supported by an affidavit to which the Separation Agreement was appended and which was alleged to be the entire agreement between

the parties in regard to child support and was a complete defense to the action. Mrs. Groner filed a motion for summary judgment also and an affidavit supporting her motion and in opposition to the motion for summary judgment of Mr. Davis. In her affidavit, Mrs. Groner stated that she had made frequent demands upon her former husband to participate financially in the university education of Lewis and the response of Mr. Davis was "never an unequivocal refusal, but usually in the form of a statement that he could not do so at this particular time." On one occasion Mr. Davis made out a check for $237.50 payable to Clark University and handed it to Mrs. Groner. This was the only payment Mr. Davis ever made towards Lewis' college education. Both parties alleged that there was no issue of a material fact and that judgment as a matter of law should be entered in favor of the respective parties.

On May 15, 1970, this matter was heard before Judge Clapp who granted summary judgment in favor of Mr. Davis for costs and denied Mrs. Groner's motion for summary judgment. In Judge Clapp's opinion, filed May 25, 1970, he indicated that in view of the "Whereas" clause, and Paragraphs I and VII of the Separation Agreement, Mrs. Groner was not entitled to reimbursement for amounts paid by her for the college education of Lewis.

For the purpose of his opinion, Judge Clapp assumed that "in the status in life of both parties this college education for the child would have been a necessity for which the father in the normal course of events would have [been] liable." In this assumption, he was correct in view of our decisions in *Wooddy v. Wooddy*, 258 Md. 224, 231, 265 A. 2d 467, 472 (1970) ; *Rhoderick v. Rhoderick*, 257 Md. 354, 263 A. 2d 512 (1970) and *Smith v. Smith*, 227 Md. 355, 176 A. 2d 862 (1962). Cf. *Brown v. Brown*, 248 Md. 139, 147-48, 235 A. 2d 706, 710, 711 (1967).

Mrs. Groner correctly contends that an action at law may be maintained to obtain reimbursement from a parent for necessities supplied by the person filing the action, citing *Price v. Perkins*, 242 Md. 501, 219 A. 2d 557

(1966) and *McKay v. Paulson,* 211 Md. 90, 126 A. 2d 296 (1956). The present case, however, is to be distinguished from the *Price* and *McKay* cases in that in neither of those last mentioned cases was there any agreement or support order involved with which the father had complied and was complying. There was no agreement between the parties in those cases in regard to what amounts would constitute a reasonable payment for necessities, nor was there any agreement in those cases that the wife would not contract any debt or charge or liability for which the husband might become personally liable or to save the husband harmless therefrom as provided in the Separation Agreement in the instant case.

In our opinion, Judge Clapp ruled properly that in view of the "Whereas" clause indicating the intention of the parties a "fair and reasonable provision. . .for the support of their children," the provision of Paragraph I fixing this reasonable provision at $175.00 per month and the provision of Paragraph VII affirmatively agreeing that the wife would not thereafter "contract any debt or charge or liability" for which the husband should or could become liable, with a further agreement to save the husband "harmless therefrom," Mr. Davis had no liability for any reimbursement of Mrs. Groner for monies paid by her for the college education of Lewis.

Mrs. Groner did not seek a support order in 1966 to make an appropriate allowance for Lewis' college education as was done in *Wooddy v. Wooddy, supra,* or to increase the monthly support payments to include a reasonable amount for such education as was done in *Rhoderick, supra,* and *Smith, supra.* See also Comments and Casenotes, 27 Md. Law Rev. 72, 75 (1967) in which it is stated:

> "In most cases the procedure used to compel payment of college expenses is modification of a child support order. The result is that weekly or monthly support payments are increased by an amount considered reasonable, in light of the

father's financial circumstances, to cover the increased expenses of the child."

In view of the Separation Agreement, Mrs. Groner cannot, after the college expenses have been paid by her, obtain reimbursement for those payments from Mr. Davis.

### Appeal No. 222

We now come to the equity suit filed by Mrs. Groner against Mr. Davis on July 25, 1969.

Inasmuch as we have already indicated that, in our opinion, the findings of fact of the lower court (sitting in equity without a jury) were not clearly erroneous — see Maryland Rule 886 — and that his conclusions in regard to the amount of a reasonable monthly allowance for the support of Andrew were not in error, the remaining contentions of Mrs. Groner requiring our consideration are relatively few. These remaining contentions are that the lower court erred in (1) using the respective annual incomes of the parties as a basis for apportionment between the parties of the $246.00 per month, found to be the reasonable amount for Andrew's support; (2) awarding less than the $175.00 per month provided for in the Separation Agreement; (3) declining to award specific performance of the obligation of Mr. Davis to maintain life and medical insurance and (4) declining to award Mrs. Groner a judgment for $80.00 in regard to orthodontic costs. We will consider these contentions in the order indicated.

### (1)

The lower court correctly found that in the present case there had been an agreement by Mrs. Groner to pay a reasonable share of the cost of Andrew's support. Judge Miller stated in his opinion that "both parties have agreed that they should contribute something to this [Andrew's] support." The record sustains this finding.

First of all Mrs. Groner, as plaintiff, alleged in Paragraph 7 of her bill of complaint that:

> "Plaintiff, as his [Andrew's] mother, is fully willing to pay part of his support, or all of his support if it were necessary, but believes it is inequitable for defendant to pay only a fraction of the actual cost of support of the parties' child."

In the course of the hearing before Judge Miller, Mrs. Groner stated:

> "We'd be prepared to stipulate that each parent should pay half of the needs of this child [Andrew], perfectly willing to stipulate that."
>
> "He's [Andrew] still quite thin. You saw him. He's tall and lean and extremely athletic. I'm happy for him to eat as much as he wants literally, no matter who pays for it."

When Mrs. Groner was a witness, the following transpired:

> "The Court: Now, let me understand this. Is it your position that you want half of what the Court finds the reasonable cost to be? Is that what you're asking?
>
> "The Witness (Mrs. Groner): Your Honor, in the beginning in order to avoid a protracted hearing which we had anyway, we offered to stipulate if they would stipulate that we would each pay half of *what this Court found to be the child's reasonable needs*. We have not done that.
>
> "Instead we've gone deeply into family income. So I would say that we would not be offering at this point—I guess perhaps my lawyer should answer this.
>
> "The Court: How much are you claiming? Are you claiming the total expense of your husband or half or what are you claiming?
>
> "The Witness (Mrs. Groner): I would think that under the circumstances as the Court will

hear from the father's testimony soon as to his income, that it would be most fair if three-quarters of Andy's support were to come from his father.

"The Court: So that you're claiming three-quarters of it?

"The Witness: Three-quarters, that's right. We're not asking—I would have no objection to his paying all, *but we're happy to pay any part of it.*"

\* \* \*

"The Witness (Mrs. Groner) : The Court may find that it isn't necessary. *I'm not saying, Your Honor, that these are essential costs.* If I were preparing this for a client who was asking their father to pay every penny I don't think it would be fair to include *things that are perhaps luxuries,* but these are the costs as they are reflected."

(All emphasis supplied.)

The lower court, in the light of the agreement, at least, by Mrs. Groner to contribute to Andrew's support, properly sought for a reasonable basis for such a contribution by her. It is clear to us that using a proportion based upon the annual earnings of respective parties is a fair and reasonable basis on which to determine the proper amount each party should contribute to the amount determined by the trial court to be reasonably required for Andrew's support.

We may add that, although each case involving awards for the support of children rests upon its own facts, we may refer to prior cases involving similar facts to ascertain whether or not the trial court in this case is in accord with similar findings in those prior cases. *Wagshal v. Wagshal,* 249 Md. 143, 238 A. 2d 903 (1968). When this is done, it clearly appears to us that the allowance of the lower court for Andrew's support in the instant case is in accord with a similar finding in recent prior decisions of this Court.

*Fuld v. Fuld,* 252 Md. 254, 250 A. 2d 93 (1969) is closely similar on the facts. See also *Rhoderick v. Rhoderick,* 257 Md. 354, 263 A. 2d 512 (1970); *Kapneck v. Kapneck,* 235 Md. 366, 201 A. 2d 798 (1964); *Levy v. Bernstein,* 237 Md. 552, 207 A. 2d 98 (1965); *Wagshal v. Wagshal, supra.*

(2)

As we have already seen, the Separation Agreement provides that the husband will pay the wife $175.00 per month for the "support of Lewis and Andrew." This provision was preceded by the statement that the provision for the minor children should "apply until each child shall have reached the age of 21 years or shall otherwise have been emancipated."

Mrs. Groner contends before us that under these provisions there can be no reduction in the $175.00 monthly payments when one of the two children becomes 21 years of age or is otherwise emancipated, but on the contrary, the full amount must continue until all of the children arrive at that status. The record does not indicate that this contention was argued before the lower court and it was not specifically passed upon by the trial court. In Paragraph 8 of the bill of complaint, however, it is stated that the $175.00 monthly payment "still applies when the amount is payable for only one child." It may well be that the point, under these circumstances, has not been properly preserved for appeal in view of the provisions of Maryland Rule 885 which provides in part that: "This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court * * *."

The question is a close one, however, and we prefer to decide the issue on the merits rather than to decline to pass upon it under Rule 885.

Assuming, *arguendo,* that Mrs. Groner's construction of the Separation Agreement in regard to child support is the correct one, she nevertheless proceeded against Mr. Davis in equity and prayed in her second prayer for re-

lief that the equity court, with respect to Andrew's support only, order the defendant Davis "to pay a reasonable sum of money weekly to plaintiff [Mrs. Groner] for the support" of Andrew. As we have already observed, Mrs. Groner stated in Paragraph 7 of her bill of complaint that she was "fully willing to pay part of his [Andrew's] support, or all of his support if it were necessary . . ." and in the course of the trial agreed to make a contribution to the reasonable cost òf Andrew's support as determined by the court. This agreement made subsequent to the Separation Agreement controlled the relationship of the parties in regard to Andrew's support and the lower court's determination gave proper effect to it as we have already decided.

### (3)

Mrs. Groner correctly states that the equity court has power to award specific performance of a father's obligation in regard to life insurance policies citing *Reichart v. Brent*, 247 Md. 66, 230 A. 2d 326 (1967) and *Zouck v. Zouck*, 204 Md. 285, 104 A. 2d 573 (1954). Specific performance, however, will only be granted in a case when there is sufficient evidence before the equity court upon which that relief may be granted. In the present case, the evidence before the lower court was testimony by Mr. Davis that he had not paid any premiums for several years on a policy of the Sun Life of Canada and that "he did not really know the exact condition of that policy to date." He had previously testified that the Bankers Life and Prudential policies mentioned in the Separation Agreement were in full force and effect. Mrs. Groner offered no evidence in regard to the amount of the premiums on the Sun Life policy, any arrearage due or any other facts upon which the lower court could predicate a decree of specific performance. As Judge Miller stated in his opinion, "The amount is not made clear, I do not know which policies are in force and which are not. There has been no independent proof that any of them are not in force."

This absence of proof in the present case is to be con-

trasted with the definite figure of $11.00 monthly provided in the separation agreement for the maintenance of insurance policies in the *Reichart* case, *supra,* which the husband had not paid, and for the payment of which the trial court in that case awarded specific performance of the $11.00 monthly provision.

In our opinion, the lower court was not in error in declining to grant specific performance of the provisions of the Separation Agreement in regard to life insurance policies.

### (4)

We finally come to a rather trivial matter involving an alleged error by the lower court in not decreeing an allowance of $80.00 to reimburse Mrs. Groner for allegedly having paid $160.00 more than Mr. Davis for Andrew's orthodontic treatment. Mrs. Groner introduced statements, marked 'Re: Andy Davis' and 'Andy Davis' respectively, from the orthodontist showing that she had paid $525.00 with a current balance due of $25.00 'for orthodontic treatment for the above patient,' and testified that she would pay the $25.00 balance and also that she had paid $60.00 additional for dental surgery in connection with the orthodontic program, being a total of $610.00. On the other hand, Mr. Davis introduced a statement from the orthodontist, marked "Re: Andy Davis" and stating the following:

"Agreed Fee     $900.00
Initial Fee     200.00
Payments:     25.00 per month

Payments received in this office for the above patient from Mr. Jack Davis

| | |
|---|---|
| 4-18-68 | 100.00 |
| 12-2-68 | 125.00 |
| 8-6-69 | 225.00 |
| Total paid | $450.00" |

Inasmuch as the *agreed* fee was $900.00 and Mr. Davis paid one-half of this amount, *i.e.,* $450.00, the lower court

was, in our opinion, justified in concluding that he was not in violation of Paragraph I c. of the Separation Agreement.

> *Judgment of May 21, 1970 in case No. 221 affirmed; decree of May 25, 1970 in case No. 222 affirmed, the appellant to pay the costs in both cases.*