PHILIP S. BRODY *v.* BARBARA A. MIDGETTE

[No. 188, September Term, 1972.]

*Decided January 26, 1973.*

The cause was argued before POWERS, CARTER and SCANLAN, JJ.

*James D. Newton* for appellant.

*Arthur V. King*, with whom were *King & Vaughey* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

Appellant, Philip S. Brody, and appellee, now Barbara A. Midgette, were married in 1961, each for the second time. The wife's son by her first marriage was adopted by the husband, and a second son was born of this marriage. The family lived at first in the District of Columbia, later in Montgomery County, in a house they purchased as tenants by the entireties.

On 25 June 1969 the wife left the home, taking the two boys, and established residence in Florida. On 28 April 1970 she was granted a divorce from Mr. Brody, by a decree of the Circuit Court in Volusia County, Florida. The decree also granted her the exclusive custody of the children. On 14 May 1970 she married Luther Midgette.

The present litigation began when Mrs. Midgette, on 12 November 1970, filed in the Circuit Court for Montgomery County a bill of complaint against Mr. Brody seeking a variety of relief. It was entitled "Bill of Complaint for Partition, for Personal Effects, for Child Support, and to Define Visitation Rights."

The complaint prayed:

a. That the court order a partition sale of real estate in Montgomery County which the parties own as tenants in common.

b. That the defendant be ordered to pay a fair amount for support of the children from 25 June 1969 until June 1970.

c. That the court order the defendant to pay henceforth for the support of his two children.

d. That the court order the defendant to return to the plaintiff certain personal effects owned by her.

e. That visitation rights of the defendant be specifically defined.

f. That the defendant be ordered to pay the legal costs and legal fees necessitated by the case.

g. And for general relief.

Mr. Brody filed an answer to the complaint, asking that it be dismissed, and combined with his answer a counterclaim asking for custody of the children.

Both parties alleged and relied upon portions of an agreement entered into between them on 8 June 1970 which appears to have dealt with custody, support, and visitation rights, and to have recognized the validity of the Florida decree.

After seemingly endless pleadings, motions, demands, interrogatories, answers, orders, depositions, hearings, investigative reports, and other proceedings, the case was brought to an end, for the Circuit Court at least, by a decree signed and filed by Judge Ralph G. Shure on 30 March 1972. At the end of the final hearing on 4 January 1972 Judge Shure had announced his findings and

conclusions on the questions at issue, and had directed counsel to prepare a decree.

The decree, approved as to form by both counsel, recited that hearings had been held on 6 April, 4 June, 9 June, 6 July and 10 September 1971 and on 4 January 1972. The judge found that the Florida divorce decree was valid and entitled to full faith and credit; that Mrs. Midgette was fit and proper to have custody of the minor children; that Mr. Brody should have rights of visitation with the children; and that Mr. Brody paid nothing for child support between 25 June 1969 and 1 June 1970.

The decree ordered that counsel for the opposing parties be "* * * appointed co-trustees to effect partition of such real property as the plaintiff and defendant own as tenants in common * * *"; awarded custody of the children to Mrs. Midgette, and detailed specifically Mr. Brody's visitation rights; entered a money judgment for $1,800.00 in favor of Mrs. Midgette against Mr. Brody for past support of the children (from the time she left until the effective date of their agreement) ; ordered Mr. Brody to pay child support in the future (in the amounts provided by the parties in their agreement) ; awarded various articles of personal property to Mrs. Midgette but as to certain articles claimed made no finding; and ordered that Mr. Brody pay the taxable costs as well as counsel fees and specified expenses or costs incurred by Mrs. Midgette.

Mr. Brody, through counsel, entered a timely appeal to this Court from that decree.

Some comments on the appellate jurisdiction of this Court are in order. Exclusive initial appellate jurisdiction in Maryland is allocated to the Court of Special Appeals by statute, in Code, Art. 5, § 5A. The authority for the statutory allocation is found in the Constitution of Maryland, Art. IV, § 14A.

Subsection (10) of § 5A of Code, Art. 5, places within the exclusive initial appellate jurisdiction of this Court:

"All cases, suits, or proceedings in which any prayer or claim for alimony, annulment of marriage, custody, divorce, guardianship, maintenance, non-public support or visitation has been asserted * * *."

Thus the questions of custody, support and visitation involved in the present case are by specification within our appellate jurisdiction. But a suit seeking only partition of real estate or sale in lieu of partition would not be within our appellate jurisdiction. Nor would a claim of ownership of personal property, nor a claim for reimbursement for past support for children, not based upon a prior court order.

Partition of real estate among owners in common, or sale in lieu of partition when appropriate, is usually accomplished as provided in Code, Art. 16, § 154. We observe that with respect to partition, the allegations, the prayer, and the decree appear to fall short of the requirements of § 154. While we do not indicate approval of this abbreviated approach to partition or sale in lieu of partition followed by the parties here, the correctness of that portion of the decree is argued only insofar as it involves the validity of the Florida divorce and the resulting dissolution of the tenancy by the entireties.

The liability of a father to pay a claim for reimbursement for support of his children for a period already past, when he was under no order to pay, is usually considered as a common law action in contract. *Carter v. Carter*, 156 Md. 500, 508, 144 A. 490, *Kriedo v. Kriedo*, 159 Md. 229, 232-233, 150 A. 720, *McKay v. Paulson*, 211 Md. 90, 94-95, 126 A. 2d 296.

When the aid of a court is sought to secure possession of tangible personalty owned by the plaintiff, the common law action of replevin is ordinarily used, unless the

relief may be decreed when a divorce is granted, as provided in Code, Art. 16, § 29. In the case before us no divorce was sought or granted, and the special jurisdiction of the equity court under § 29 does not apply.

Six kinds of relief were sought in the equity court by this bill of complaint. Four of them are equitable. Three are specifically within our appellate jurisdiction; one is not. The two other kinds of relief are ordinarily cognizable in the law courts. Neither is specified as being within our appellate jurisdiction. Neither the parties nor the lower court questioned the joining of all of these claims in one suit in the equity court. We are not asked to say that there was a misjoinder or that the complaint was multifarious.

Unless there are problems of the jurisdiction of the lower court, and we see none here, we shall take the issues as the parties raise them. Perhaps Maryland Rule 313 is broad enough to permit such joinder, by itself or with help from the principle that if there is any ground in a complaint upon which relief in equity may be invoked, the equity court will take jurisdiction of the entire case, in order to afford complete relief, and to avoid a multiplicity of suits at law. *Legum v. Campbell*, 149 Md. 148, 131 A. 147, *Silver Hill Sand Co. v. Carozza Corp.*, 184 Md. 226, 40 A. 2d 311, and *Nagel v. Todd*, 185 Md. 512, 45 A. 2d 326.

But before ruling upon the points raised, we must be satisfied that we are acting within our appellate jurisdiction. We read Code, Art. 5, § 5A (10) to mean that we have appellate jurisdiction of any case, suit, or proceeding in which any prayer or claim is asserted for any relief specified in the section, and that such jurisdiction extends to the whole case, including those aspects of which we would not have jurisdiction if they stood alone.

We consider it unnecessary and unproductive to discuss all of the facts in detail. The Florida court assumed

and exercised jurisdiction. Appellant argues that Mrs. Midgette committed a fraud on that court regarding her residence there. There was evidence that she established a home there and entered her boys in school, which they attended for a full year. She filed a manifestation of domicile in Florida. She resigned her employment here, and obtained employment there. She closed her bank account here, and opened an account there. She registered her car in Florida, and obtained a Florida driver's license. She has never returned to Maryland or to this area to live.

Appellant places great importance on the facts that Mrs. Midgette remarried a few weeks after the divorce, and that after living in Florida for another month with her new husband, they moved to Buxton, North Carolina, where he had previously lived. Mrs. Midgette testified that she and her new husband intended to remain in Florida, but that he was unable to find employment there, and they decided to move to North Carolina, where employment for him was available.

We have considered the facts here in the light of *Naylor v. Naylor,* 217 Md. 615, 143 A. 2d 604, *Gregg v. Gregg,* 220 Md. 578, 155 A. 2d 500, *Staley v. Staley,* 251 Md. 701, 248 A. 2d 655, *Dackman v. Dackman,* 252 Md. 331, 250 A. 2d 60, and other opinions of the Court of Appeals dealing with the validity of foreign divorces. We see no reason to disturb Judge Shure's finding that the Florida divorce between the parties in this case was valid.

At the close of testimony taken before Judge Shure on 6 July 1971 he announced that the case was concluded, but the record was held open for the filing of transcripts of two depositions already taken. On the same day appellant filed a motion for appointment of a commissioner to take testimony of another witness, a deputy sheriff in North Carolina. The judge filed a short memorandum saying the case had been heard and the motion was not in order. At a further hearing on 10 September 1971 the

judge considered and granted a motion previously filed by appellant that the case be referred to the Court Investigator on the question of custody. Appellant's counsel conceded that if the Court Investigator interviewed the deputy sheriff, his other motion was moot. The Court Investigator did interview the deputy sheriff.

Appellant now argues that the court erred in denying his motion. The argument has no merit.

An extensive report made by the Court Investigator, and local reports from North Carolina and Florida, were made available to counsel in December 1971 and were considered at a hearing before Judge Shure on 4 January 1972. Counsel for Mr. Brody then asked leave to put on additional testimony, and the court permitted Mr. Brody, who was present, to testify further. Counsel then asked that the case be continued so that he could obtain other witnesses. He pleaded short notice of the hearing. The record shows that on 8 December 1971 counsel were notified that the court had set the case for disposition on 28 December, later put over to 4 January at appellant's request. Judge Shure declined to postpone disposition of the case. In so doing he did not abuse his discretion. Counsel argued further, and the judge then orally outlined his conclusions, and requested counsel to prepare the decree.

Appellant contends that the judge erred in entering judgment for $1,800.00 against him for support of the children prior to the time appellant began paying for their support under the agreement entered into between the parties. He raises no question whether this essentially common law claim was properly before the equity court. He claims only that the evidence did not support the finding. Judge Shure expressed doubt about the evidence on the question, but finally resolved his doubt by considering that appellant agreed in June of 1970 that $200.00 a month was reasonable, and by assuming that a minimum of $150.00 a month was reasonable for the

preceding year. We think the evidence supports his finding.

The bulk of appellant's brief is devoted to the question of custody. He obliquely attacks the court's decree awarding custody to the mother by arguing the invalidity of the Florida decree, by arguing that he was twice denied the opportunity to offer more evidence on the issue, and by asserting that the court prejudged the issue. But nowhere does he say that the award of custody to the mother was error.

Appellant's attack on the question of custody was against the fitness of Mrs. Midgette's new husband to be the stepfather of the children. Much was alleged but little of significance was proved concerning Mr. Midgette. The report of the Court Investigator described in detail the Midgette family situation, and strongly recommended that Mrs. Midgette, and not Mr. Brody, have custody of the children.

We have considered all of the evidence and reports pertinent to the question of custody. We have reviewed the distillation in *Sullivan v. Auslaender,* 12 Md. App. 1, 276 A. 2d 698, of the applicable law of Maryland as expressed in numerous opinions of the Court of Appeals therein cited. In the exercise of our best judgment, the conclusion of the chancellor was the best one for the welfare, benefit, and interest of the children.

Appellee's counsel has filed in this Court a petition for allowance of a fee for this appeal. Of course, it is only for those services performed for the benefit of the children that the father is obligated to pay. In this multi-faceted appeal we conclude that $250.00 is a fair portion of appellee's counsel fee to be paid by Mr. Brody.

*Decree affirmed.*
*Appellant to pay costs and to pay a fee of $250.00 to appellee's counsel for this appeal.*