# NANCY C. KEMP *v.* NICHOLAS B. M. KEMP

[No. 66, September Term, 1979.]

*Decided February 22, 1980.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ.

*Donald F. Chiarello* for appellant.

*Robert A. DiCicco* for appellee.

DIGGES, J., delivered the opinion of the Court.

We granted certiorari in this proceeding to review the following questions which arise under an earlier divorce and child custody decree entered in this same equity action: (1) whether the Court of Special Appeals improperly substituted its view of the evidence in the trial court for that of the chancellor when it reversed his order suspending the father's initially decreed visitation privileges with his son? And (2) whether the equity court here lacked jurisdiction to enforce a provision of this same family dissolution decree regarding the payment of reasonable medical expenses of the parties' children? Because at oral argument in this

Court, both parties agreed that there has been such a substantial passage of time, as well as a material change in circumstances, since testimony was presented with regard to the respondent visiting his son, a new hearing on that issue is now necessitated; accordingly, with only minimal discussion of this issue, we will direct the Court of Special Appeals to vacate that portion of the chancellor's decree and order a new hearing on the visitation question. Further, because the provision of the divorce and custody decree relating to the payment of medical expenses incorporated an agreement of the parties on this matter, we find that the equity court had jurisdiction to specifically enforce this decretal provision, and accordingly, will reverse the intermediate appellate court's decision that such an order was beyond the jurisdiction of the trial court.

Petitioner Nancy C. Kemp and respondent Nicholas B. M. Kemp separated, after eleven years of marriage, in October 1972, and were subsequently divorced *a vinculo matrimonii* on May 17, 1974. Custody of the parties' two minor children, Frances (now 17) and Nicholas, Jr. (now 12), was awarded to the petitioner, with a specific schedule of visitation of the daughter and son with the respondent set forth in the decree. The divorce and custody decree required Mr. Kemp to contribute toward the support of his children "the sum of Fifty Dollars ($50.00) per week per child and to pay such other sums for the education and general welfare of the children as provided for in an Agreement by and between the parties hereto dated May 17, 1974." In the separation agreement, which was approved by the court and incorporated into its decree "as if fully set forth herein," the respondent specifically agreed to pay, among other things, the "reasonable medical and dental expenses for said minor children." It is this latter provision, as well as the visitation privileges awarded to the father, which underlies this appeal.

Ever since the parties' domestic difficulties began in 1972, there has been a continual controversy between them over the respondent's visitation with his son.[1] Legal proceedings

---

1. By agreement of the parties, Mr. Kemp's visits with his daughter ceased in the fall of 1973.

were begun in the summer of 1975 by Mr. Kemp to enforce the 1974 decree and by Mrs. Kemp to modify the visitation schedule; this legal skirmish was settled prior to court disposition of the matter. However, the parties' disagreement again returned to the court by the institution of the present proceeding in April 1977. At that time, Mrs. Kemp terminated all associations between her son and her ex-husband, and petitioned the circuit court for a temporary suspension of his visitation rights. Mr. Kemp countered with a request of his own seeking to hold his ex-wife in contempt for violating the visitation provisions of the earlier decree. The father also discontinued support payments for his son, which, in turn caused the mother to file a second petition also praying for the issuance of a contempt citation against her ex-husband for his failure to provide this weekly payment. Mrs. Kemp further alleged as a basis for relief that her son had been under the medical care of a psychiatrist since December 30, 1972, and that this expense had not been paid as required by the decree.

A hearing was held on these petitions and the chancellor (Haile, J.), finding that the continued visitation between Mr. Kemp and his son would not be in the child's best interest, ordered that such visits should be suspended "subject to the continuing jurisdiction of this court." The court also ended the respondent's obligation to pay child support during this suspension since it determined that the father's conduct "[was] not the sole cause of the estrangement between himself and his son." In addition, the chancellor dismissed both petitions for contempt, and, after finding that the "services of the psychiatrist were necessary," he ordered Mr. Kemp to reimburse his ex-wife for the $1,245 which she had paid to the doctor for the son's medical care that he received beginning in December 1972. Both parties noted a timely appeal from the circuit court's order to the Court of Special Appeals. The appellate court reversed those portions of the chancellor's order suspending the father's visitation rights and support obligations, as well as the chancellor's direction that Mrs. Kemp be reimbursed for all the psychiatrist's bills she had paid. As a basis for overturning the circuit court's

suspension of visitation, the intermediate appellate court explained:

> We do not feel that the circumstances here present the exceptional case [2] where all access to the child should be denied the father. The report of the Probation Department to the court made no recommendation that visitation be suspended. Nor was there any clear showing otherwise that any contact of the child with his father would be so detrimental to the child as seriously to endanger his well-being. [*Kemp v. Kemp,* 42 Md. App. 90, 97-98, 399 A.2d 923, 928 (1979).]

With relation to the reimbursement of the medical bill, the appellate court held that, as a court of equity, the trial court lacked jurisdiction to order such a payment. *Id.* at 99-100, 399 A.2d at 928-29. We now explain our alternative disposition with respect to these rulings made by the Court of Special Appeals.

Turning first to the issue of visitation, we find it is no longer necessary to decide whether the intermediate appellate court utilized an improper standard of review when it examined the circuit court's decision because that issue is now moot. It has been two and one-half years since Judge Haile's hearing on visitation, and both parties now agree that circumstances have sufficiently changed so as to require a new hearing on this question. Thus, whether we accept the Court of Special Appeals' actions in this regard is purely an academic question and one which we will not decide. *See Atty. Gen. v. Anne Arundel Cty. Sch. Bus,* 286 Md. 324, 327, 407 A.2d 749, 752 (1979). However, because the petitioner's contention before this Court that the Court of Special Appeals usurped the trial court's function with respect to evaluating the evidence may well have merit, we reiterate the "three distinct aspects of review," established in *Davis v. Davis,* 280 Md. 119, 372 A.2d 231, *cert. denied,*

---

2. The standard to be utilized in determining whether denial of visitation of a parent should be ordered was established by this Court in Radford v. Matczuk, 223 Md. 483, 164 A.2d 904 (1960).

434 U.S. 939 (1977), which should be utilized whenever an appellate court examines a decision by the chancellor concerning the welfare of children. As we said in *Davis* :

> When the appellate court scrutinizes factual findings, the clearly erroneous standard of Rules 886 and 1086 applies. If it appears that the chancellor erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. Finally, when the appellate court views the ultimate conclusion of the chancellor founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the chancellor's decision should be disturbed only if there has been a clear abuse of discretion. [*Id.* at 125-26, 372 A.2d at 234 (footnote omitted).]

When deciding on remand the type of association that should exist between Mr. Kemp and his son, the chancellor must, of course, do so on the basis of what he believes is in the best interests of the child, *e.g., Stancill v. Stancill,* 286 Md. 530, 534, 408 A.2d 1030, 1033 (1979); *Radford v. Matczuk,* 223 Md. 483, 488-89, 164 A.2d 904, 907-08 (1960), but he should, in accordance with the standard articulated by this Court in *Radford v. Matczuk, supra,* 223 Md. at 488, 164 A.2d at 907, only deny total visitation if the evidence clearly demonstrates the existence of extraordinary circumstances requiring such drastic action.

Having concluded that the first issue is moot, we now take up the problem of whether a court of equity may order one parent to reimburse the other for medical expenses incurred on behalf of the parties' minor child which were not contemplated as being within the specific amount of support previously ordered. Here, the parties' youngest child, Nicholas, has been seeing Dr. John M. Arthur, a psychiatrist, periodically since December 1972. At the time of the hearing before Judge Haile, the bill for Dr. Arthur's services amounted to $1245, which Mrs. Kemp had paid. In ordering the respondent to reimburse his ex-wife for this

expense, the chancellor relied on the following provision of the separation agreement which had been incorporated into the divorce-custody decree:

> The Husband further agrees to pay reasonable medical and dental expenses for said minor children. . . . The Husband shall be consulted on all major medical, surgical and/or dental needs for the minor children except where emergency will not permit, provided, however, that Husband shall not unreasonably withhold his consent.

The Court of Special Appeals reversed the circuit court's order of payment. Relying principally on the decisions of this Court in *Kriedo v. Kriedo,* 159 Md. 229, 150 A. 720 (1930) and *Frank v. Frank,* 203 Md. 361, 101 A.2d 224 (1953), the intermediate appellate court held that, notwithstanding the just-quoted provision of the agreement which had been incorporated into the divorce-custody decree "as if fully set forth [t]herein," the equity court lacked jurisdiction to order that the medical bills be paid by Mr. Kemp, since these necessaries could only be recovered in an action at law. *Kemp v. Kemp, supra,* 42 Md. App. at 99-100, 399 A.2d at 928-29. We in part disagree. In *Kriedo v. Kriedo, supra,* this Court addressed for the first time the question which we now ponder, although not in the same factual context as is present in this case. There we reviewed a refusal by the chancellor to enter a supplemental order directing the father to pay his child's medical and funeral expenses incurred by his ex-wife as a result of the sudden illness and death of his child. In affirming the chancellor's denial of relief we held that it was well-settled that claims for "extraordinary necessary expenses for the child, *not contemplated or intended to be covered by the award previously made,*" were not cognizable in equity, but could only be litigated in a court of law. *Id.* at 236, 150 A. at 723 (emphasis added). This conclusion was premised on the maxim that unless contemplated by the provisions of the equity decree establishing child support, the common law obligation to pay for necessaries used in support of one's minor children was,

at the time of that decision, primarily a duty of the father and was owed to the person supplying the items on an implied contractual basis.[3] Since, ordinarily the remedy for a failure to pay for contracted goods and services is at law, the child's mother by paying for these items is simply subrogated to the rights and remedies of the supplier. *Id.* at 231-32, 150 A. at 721-22.

The petitioner distinguishes *Kriedo,* and rightfully so in our view, on the fact that here there was, and there there was not, an agreement between the parties providing for the payment of these expenses which the court incorporated as part of its original decretal relief. The Court of Special Appeals, while recognizing that this distinction does exist, believed that this Court's later decision of *Frank v. Frank, supra,* undercut the impact of this additional factor. Our view, however, is to the contrary. In *Frank,* a separation agreement, containing a provision for medical expenses similar to the one in this case, had been incorporated into the decree then under consideration by the court. While the enforceability of this provision was not at issue,[4] this Court's opinion did make the following reference to it:

> It is quite clear that the order to pay medical expenses was beyond the court's authority, *in the absence of agreement.* The husband's liability, to pay for necessaries furnished his minor child, is to the supplier in an action at law, and not enforceable by application of the wife to the divorce court. *Kriedo v. Kriedo, supra.* [*Frank v. Frank, supra,* 203 Md. at 369, 101 A.2d at 228 (citations omitted) (emphasis added).]

While we recognize that the language used is not a paragon

---

**3.** After the passage of the Equal Rights Amendment, Md. Decl. of Rts., Art. 46, this obligation of support is no longer primarily a duty of the father but is one shared by both parents. *See* Rand v. Rand, 280 Md. 508, 516, 374 A.2d 900, 905 (1977).

**4.** Before us in *Frank* was the issue of whether there was adequate consideration for a provision of the separation agreement by which the wife waived all claims of alimony.

of clarity, we think that it does acknowledge that an equity court has jurisdiction to enter an enforcement order relating to the payment of a child's medical or other necessaries, if the parties have agreed to it as part of their marital settlement and if this agreement was incorporated as part of an earlier decree, thus demonstrating that the payment was contemplated by the court when the decree was signed.

We have long held that provisions for support and maintenance of one's spouse which, because of the statutory restriction on awarding alimony, Md. Code (1974, 1979 Cum. Supp.), Courts Art., § 3-603 (a) (limiting court's power to awards of "technical" alimony), would otherwise be outside of the jurisdiction of equity to include in a decree, may be incorporated and enforced, if based on an agreement of the parties.[5] *See, e.g., Wooddy v. Wooddy,* 258 Md. 224, 232, 265 A.2d 467, 472 (1970); *Dougherty v. Dougherty,* 187 Md. 21, 32, 48 A.2d 451, 457 (1946); *Bushman v. Bushman,* 157 Md. 166, 174, 145 A. 488, 492 (1929); *Dickey v. Dickey,* 154 Md. 675, 679, 141 A. 387, 389 (1928); Md. Rule S77 b. *Cf.* Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 16, § 28. In awarding maintenance and support for children, this Court has paralleled its decisions in the alimony area and placed the same limitations on the type of relief which the chancellor may grant, *i.e.,* in the absence of an

---

5. We should note that the restriction mentioned above was partially removed by the General Assembly's 1978 enactment of sections 3-6A-01 through 3-6A-07 of the Courts Article, which permits a court in a divorce action to equitably adjust the rights of the spouses in their marital property. For example, a court may now enter a monetary award, similar in nature to alimony in gross, representing the spouses' share of property acquired during the marriage, *id.* § 3-6A-05, and it may order one party to pay the costs associated with maintaining the family home, *id.* § 3-6A-06 (c) (2). Awards of this type were not previously permitted, absent an agreement, because they were not technical alimony. *See, e.g.,* Dougherty v. Dougherty, 187 Md. 21, 32-33, 48 A.2d 451, 457 (1946); Roberts v. Roberts, 160 Md. 513, 521-23, 154 A. 95, 98-100 (1931); Bushman v. Bushman, 157 Md. 166, 174, 145 A. 488, 492 (1929). For a discussion of this new statutory scheme, see Note, *Property Disposition Upon Divorce in Maryland: An Analysis of the New Statute,* 8 U. Balt. L. Rev. 377 (1979).

The General Assembly also expanded equity's general powers in a divorce action when it enacted chapter 221 of the 1977 Laws (codified as Md. Code (1974, 1979 Cum. Supp.), Courts Art., § 3-603 (b)) providing it with "not only those powers inherent to ecclesiastical courts of England, but also the powers of general and ordinary equitable jurisdiction . . . ." 1977 Md. Laws, ch. 221 (preamble).

agreement or express statutory authority, the court may only award a specified payment of money. *See Wooddy v. Wooddy, supra; Price v. Price,* 232 Md. 379, 384-85, 194 A.2d 99, 102-3 (1963); *Blades v. Szatai,* 151 Md. 644, 649, 135 A. 841, 843 (1927). *See generally* J. Alexander, "Support and Property Rights Absent Agreement," *Maryland Divorce & Separation Law* 24, 33 (1974) (CLE Handbook). Two decisions of this Court at the beginning of the last decade, for example, demonstrate the relationship of an agreement to the powers of an equity court — *Wooddy v. Wooddy, supra* and *Groner v. Davis,* 260 Md. 471, 272 A.2d 621 (1971). In *Wooddy* we held that the equity court lacked jurisdiction to order Dr. Wooddy to designate his children as beneficiaries of certain life insurance policies because the statute, which granted the court jurisdiction to award "support and maintenance," Md. Code (1957), Art. 16, § 66 (now Md. Code (1974), Courts Art., § 3-602), was not broad enough to include this form of child support. On the other hand, in *Groner,* a case decided a mere nine months later in which the same relief was requested, we held that, because of an agreement between the parties, the court had jurisdiction to award such relief.[6] Therefore, the agreement of the Kemps, having been incorporated in the divorce-custody decree, provides a sufficient basis for the circuit court's jurisdiction in this case. However, the court only has jurisdiction to order the payment of medical bills incurred after the date of the decree; those incurred while the respondent was under no order to pay are subject to our holding in *Kriedo* and may only be recovered, if at all, as a common law action in

---

[6]. While neither party here raises the issue, it may well be that either section 3-602 (a) of the Courts Article, Md. Code (1974) (granting the court original equity jurisdiction, although unassociated with a divorce action, to determine the custody, support and maintenance of minors) or section 25 of Article 16, Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.) (granting jurisdiction in the same matters relating to children in a divorce action) is sufficiently broad to allow the court to award, even in the absence of an agreement, the type of relief which it granted in its original decree in this case, since medical and dental expenses are inherently required for a minor's well-being. *See* Stancill v. Stancill, 286 Md. 530, 534-35, 408 A.2d 1030, 1033 (1979). In making this observation we are not unaware that there are prior decisions of this Court which may be read as intimating to the contrary. See Hull v. Hull, 201 Md. 225, 232-33, 93 A.2d 536, 540-41 (1953); Blades v. Szatai, 151 Md. 644, 649, 135 A. 841, 843 (1927).

assumpsit. *See McKay v. Paulson,* 211 Md. 90, 94-95, 126 A.2d 296, 298-99 (1956); *Carter v. Carter,* 156 Md. 500, 508, 144 A. 490, 493 (1929); *Brody v. Midgette,* 16 Md. App. 647, 651, 299 A.2d 124, 127 (1973). Since the record demonstrates that only $660 of Dr. Arthur's $1245 bill was for medical services rendered the son after May 17, 1974, the date of both the agreement and the decree, and there was nothing in either the agreement or decree which indicates that the father would reimburse the mother for medical bills incurred by her prior to that date, $660 is the most which the equity court could award.

Once the court decides to incorporate an agreement between the parties as part of its decretal relief, something which it does not necessarily have to do, particularly as to provisions relating to children, *see* Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 16, § 28; *Stancill v. Stancill,* 286 Md. 530, 535-36, 408 A.2d 1030, 1033-34 (1979), the agreement is included within the order and is enforceable as a valid provision of the decree. *See Lewis v. Lewis,* 256 Md. 45, 55, 259 A.2d 246, 250 (1969); *Langville v. Langville,* 191 Md. 103, 110, 60 A.2d 206, 209 (1948); *Foote v. Foote,* 190 Md. 171, 177, 57 A.2d 804, 807 (1948); *Dickey v. Dickey, supra,* 154 Md. at 680-81, 141 A. at 389-90. This does not mean, however, that the equity court may invariably utilize the full panoply of the enforcement powers granted to it by Md. Rule 685, or that those that are available may always be used without further proceedings. For instance, because the provision requiring the payment of all "reasonable medical and dental expenses" here is not a decree to pay a specified sum the court could not, without more, utilize its contempt powers in enforcing this provision. The equity court would first have to hold such further proceedings as it deems appropriate to determine the amount owing under this provision, then enter an order to pay a specified amount of money, which if deemed an award for support, could at that time be enforced by the contempt power upon a failure to pay. *See* Md. Const., Art. III, § 38 (exempting child support from the prohibition against imprisonment for debt). This same initial procedure is

necessary before the court can order execution or attachment under that same Maryland Rule. *See Langville v. Langville, supra.*

The remedy requested in this case by Mrs. Kemp was for specific performance of the decree, as well as for contempt due to her ex-husband's failure to pay the bills incurred. Judge Haile awarded the former but denied the latter, and in doing so, in our view, was only partly correct. We explain. In the first place, the entry of the money judgment, as we already stated, was in an amount greater than permitted. Secondly, while the court's refusal to utilize its contempt power to enforce the provision of the previous decree relating to medical expenses is an action which is ordinarily not reviewable, Md. Code (1974), Courts Art., § 12-304; *Tyler v. Baltimore County,* 256 Md. 64, 71, 259 A.2d 307, 310 (1969),[7] and is not examined by our decision today, we note, however, that the circuit court's contempt power was not available to it here in any event, since, as we stated in the preceding paragraph, this power could not be exercised until the payment of a sum certain had been ordered. Finally, the chancellor's award of specific performance, which "will only be granted in a case when there is sufficient evidence before the equity court upon which that relief may be granted," *Groner v. Davis, supra,* 260 Md. at 483, 272 A.2d at 627, is a remedy that rests within the discretion of the chancellor, and will only be disturbed on appeal upon a showing of abuse. *E.g., Brown v. Brown,* 278 Md. 672, 675-76, 366 A.2d 18, 20-21 (1976); *Reichhart v. Brent,* 247 Md. 66, 72, 230 A.2d 326, 329 (1967); *Zouck v. Zouck,* 204 Md. 285, 296, 104 A.2d 573, 577-78 (1954); *accord,* E. Miller, *Equity Procedure as Established in the Courts of Maryland* § 656 (1897). Accordingly, we will direct a reinstitution of that portion of

---

**7.** Section 12-304's right of review is granted "only to those adjudged in contempt, not to those who unsuccessfully seek to have another held to be contemptuous ... [unless the] refus[al] to impose the order for civil contempt is so much a part of or so closely intertwined with a judgment or decree which is appealable as to be reviewable on appeal as part of or in connection with the main judgment. ..." Tyler v. Baltimore County, 256 Md. 64, 71, 259 A.2d 307, 310-11 (1969).

the chancellor's monetary order which we have determined he had authority to grant ($660).

> *Judgment of the Court of Special Appeals reversed with instructions to that court to vacate the decree of the Circuit Court for Baltimore County and remand the case for the entry of a monetary decree and for further proceedings, both in accordance with this opinion.*
>
> *Costs in this Court to be paid ⅔ by Nicholas B. M. Kemp and ⅓ by Nancy C. Kemp.*